348

## BARTCHY v. UNITED STATES.

### No. 10333.

Circuit Court of Appeals, Fifth Circuit.

Dec. 23, 1942.

Rehearing Denied Jan. 26, 1943.

Bernard A. Golding, of Houston, Tex., for appellant.

William R. Eckhardt, III, Asst. U. S. Atty., of Houston, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

Appellant, a registrant under the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq., was found guilty of knowingly failing to keep his local draft board advised at all times of the address where mail would reach him, in violation of Section 11 of the Act.[1] The only decisive question is whether there was substantial evidence to support the finding of the court below, the case having been tried without a jury.

These are the determinative facts, as to which there is no dispute: Prior to February 4, 1942, appellant had been placed in Class 1A by his local draft board, and had passed his pre-induction physical examination. On or about that date he was advised by the board that he probably would be inducted within twenty-five or thirty days. On February 10, 1942, appellant wrote to his local board and stated that he was that day shipping as a seaman aboard a named merchant vessel; that he would return within two weeks; and that he could be reached by mail addressed in care of the National Maritime Union in Houston, Texas. He did not ship aboard the vessel named, giving as his reason therefor the belated discovery that the ship was to take a three-month voyage, and that he could not be absent from Houston more than twenty days in view of his draft status. The following day he shipped aboard another merchant vessel, bound for New York; and the Union was advised to forward his mail to the offices of the Union in New York City. Prior to this voyage appellant had never worked as a seaman, but he claimed occupational deferment as a seaman in the merchant marine in his letter of February 10, 1942, to the local board.

Upon his arrival in New York on February 20, 1942, appellant called at the Union offices, but no mail had yet arrived for him. He signed off the vessel on which he had come, and did not attempt to secure passage on any other returning to Houston; but, on February 25th, he shipped aboard a vessel being repaired in Hoboken, N. J., for a foreign voyage. He remained aboard this ship from February 25, 1942, until March 11, 1942, during which time he did not communicate in any way with the Union offices in New York or with his draft board. He testified that it was his intention, in the event he received no communication from his draft board prior to the sailing time of the vessel, to ship on the voyage in foreign commerce from

---

[1] 50 U.S.C.A. Appendix, § 311.

which he would not return for several months. Meanwhile, on February 20, 1942, the draft board mailed to appellant a notice to report for induction on March 4, 1942. This notice was forwarded to the offices of the Maritime Union in New York, but was returned unopened to the draft board with a letter advising that appellant had sailed upon a foreign voyage prior to the arrival of the notice. The local board notified the Federal Bureau of Investigation of appellant's delinquency, and he was taken into custody in New York on March 11, 1942, shortly before the vessel on which he had signed was scheduled to begin its foreign voyage.

Article 641.3 of the selective service regulations, promulgated under Section 10 of the Selective Training and Service Act of 1940, places an affirmative duty upon every registrant under the Act to keep his local draft board advised at all times of the address where mail will reach him. The finding of the court below that appellant failed in the discharge of this duty is supported by substantial evidence. Moreover, appellant's conduct in shipping aboard a vessel bound in foreign commerce, with the acknowledged intent to absent himself from the United States for a period of several months if he received no communication from his draft board before the sailing date, and his failure to contact the Union or the local board at any time during the crucial two-weeks period when his notice of induction was due, supports the inference that he not only failed to do what was required of him to effectuate the communication of notice but also affirmatively endeavored to avoid delivery of the communication.

The judgment is affirmed.

HUTCHESON, Circuit Judge (dissenting).

Appellant, a registrant under the Selective Training and Service Act of 1940 was prosecuted under an indictment in two counts. The first charged that, called to report and submit himself for induction into the armed forces of the United States on March 4, 1942, and therefore under a duty so to do, he, in violation of the Selective Training and Service Act, Sec. 311, Title 50 U.S.C.A. Appendix, failed and neglected to perform the duty so required of him. The second charged that the defendant was registered with local draft board No. 9, that in accordance with the provisions of the Selective Training and Service Act of 1940 and the rules and regulations prescribed thereunder, it was his duty to keep the draft board advised at all times of the address where mail would reach him, and that, in violation of that duty, he knowingly, willfully and feloniously did fail and neglect to keep the local draft board so advised. Defendant demurred to the indictment and each count thereof. The demurrers overruled, he pleaded not guilty and, upon his request with the approval of the court and the United States Attorney, a jury was waived and all questions of fact as well as of law were submitted to the court. At the conclusion of the trial there was a verdict and finding of not guilty of, failure to report for induction as charged in count one of the indictment and of guilty of, failure to keep the draft board advised of the address where mail would reach him as charged in count two. This appeal followed a judgment and sentence of sixty days on that count. Appellant is here insisting that his demurrer to count two of the indictment was well taken and that that count should have been dismissed. He makes the further insistence that, the evidence,[1] without conflict, every fact testified to consistent with every other fact, no witness disputing the testimony of any other, the facts thus disclosed are wholly insufficient to establish beyond a reasonable doubt that appellant failed to keep his local draft board advised at all times

[1] These are the undisputed facts as the record discloses them: Defendant was registered with Local Draft Board No. 9 in Houston, Texas. When he registered he gave his address as 7428 Sherman Street, Houston, Texas. He completed his selective service questionnaire, was given a preliminary physical examination, and was, on January 20, 1942, classified 1-A by the Board. On February 3, 1942, appellant was given an Army physical examination. At the time of this physical examination the address which the Board had for the registrant was 7543 Harrisburg Boulevard, Houston, Texas. On about February 4, 1942, the appellant came to the office of the Local Board and asked how much time he would have before induction. He was advised that he would be inducted in about twenty-five or thirty days. On February 10, 1942, appellant advised the Board by letter that he was shipping as a seaman aboard the steamship Caliche, and gave his address

of the address where mail would reach him. It think it clear beyond any possibility of doubt both that the second count of the indictment states no offense and that

if it does, the evidence fails to establish its commission. The government, the district judge, and the majority, considering only the first sentence of the regulation,

---

as the National Maritime Union, 8045 Harrisburg Boulevard, Houston, Texas:

"Tuesday, Feb. 10, 1942.

"Selective Service Board No. 9,

"504 Hermann Bldg.,

"Houston, Texas.

"Dear Sirs:

"In accordance with your regulations, I am notifying you that I have today shipped as a seaman aboard The S. S. Caliche. I have asked the Company and the office of the National Maritime Union 8045 Harrisburg Blvd. to also notify you.

"I do not want you to in any way believe that I am seeking to safeguard my life from service on behalf of our countries fight against Hitlerism. On the contrary I am told that because of recent sinkings the casualty list among Merchant Seamen is as high or higher than in any other section of Service.

"However, I prefer service in the Merchant Marine to any other branch of service because of the dependent which I have acquired recently—too recently to be recognized by your board—and since the Maritime Commission and the Federal Government have appealed for young men to join the Merchant Marine to replace those being sunk and to man the new ships being built I have volunteered for this branch of our countries defense effort.

"In the event that you do not consider my service as an active seaman deferable you may communicate with me at my new mailing address 8045 Harrisburg Blvd., care National Maritime Union. The trip I am shipping on will not last more than two weeks, and since I have not received from you yet either the final report on my physical examination, or an order giving me the date of induction, and since I was told by your board that I would have from 25 to 30 days after my physical examination (most probably), I believe that in the event you decide to induct me into the army that I shall be back in Houston before the effective date of induction.

"Please send your decision to me at 8045 Harrisburg Blvd., Houston.

"Sincerely Yours,

"Homer L. Bartchy,

"Homer Lester Bartchy,

"8045 Harrisburg Blvd.,

"Order No. 2671.11."

On the same date appellant advised the Board by telegram that he was sailing on the steamship Pan-Maine. On February 11, 1942, the appellant actually sailed

aboard the steamship Pan-Rhode Island, arriving in New York on February 20, 1942. There he went to the New York office of the N. M. U. and reported to James Merrell, the person in charge for N. M. U. of placing and keeping up with men furnished by it for signing on merchant vessels. Explaining his situation fully and telling Merrell that he expected to hear from his draft board by a communication forwarded from the N. M. U. office in Houston to the N. M. U. office in New York, and charging Merrell to send it at once to him, defendant on February 25, in New York signed on the steamship American Packard for a foreign voyage, expecting to be notified if called by the Board. He remained on board this vessel continuously from Feb. 25, 1942, until March 11, 1942, awaiting its departure, as it was being delayed by repairs and other things, and he was required to be there and ready at all times. Before he left Houston he explained the whole thing to the agent for the N. M. U., whose office he had given as his address there and asked that all communications be forwarded. On February 20, 1942, an order to report for induction was mailed by the Local Board directing the appellant to report on March 4, 1942. This order was mailed not to the address last given but to 7543 Harrisburg Boulevard. This order found its way to the National Maritime Union office at 8045 Harrisburg Blvd., Houston, Texas, and was forwarded to the National Maritime Union office at New York, where it was received by James F. Merrell, and returned by him to the Local Board. Communicated with by the Board, after they had received the return of their induction order, Merrell explained the situation fully to them, pointed out the great necessity for men on merchant ships and urged the Board to defer defendant until he could make the trip he had undertaken. Without following the regulations which require the Board to carefully consider whether a person registered is a willful or unintentional violator, the Board proceeded to turn the matter over to the District Attorney for prosecution, and the prosecution was immediately instituted. When advised that the Board considered defendant delinquent, Merrell made further inquiry, found that defendant's ship had not sailed, notified him that the F. B. I. wanted him on a charge in Houston, and defendant came in and surrendered.

"It shall be the duty of each Registrant to keep his Local Board advised at all times of the address where mail will reach him", and failing to consider it as a whole, fell into the error of completely misapprehending its meaning and effect, and, therefore, of assuming that the regulation imposed the duty of keeping the Board advised from day to day of Registrant's whereabouts and that the failure to do so constituted an offense. The reading of the regulation as a whole in the light of the Selective Service Act, its provision and purpose, makes quite clear that the regulation had one purpose and effect and one only. That purpose and effect was to advise the registrant that the Board would rely in sending out its communications upon the address last given and if he did not want it to continue to use that address, he should advise it of any change. It had neither the purpose nor the effect of making it an offense for the registrant to stick to his original address. This is the regulation in whole: "641.3 Communication by mail. It shall be the duty of each Registrant to keep his local Board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not." What it intends to, and does, accomplish, is this: When the registrant gives his address at time of registration, he must expect that address to serve as the one for the Board to communicate with him by, and if he doesn't notify the Board of a change of address, he must expect to be bound by notices sent to that address whether he receives them or not, and to abide the consequences of their sending though they were not received. Thus the regulation puts the responsibility for his failure to actually receive notices upon the registrant and not upon the board, and it instructs him that if he wants to be sure that he will actually and not merely constructively receive notices, he must keep the board advised of changes of address. At the same time, it tells him that his last reported address will be a sufficient address for all the purposes of the Board and that the mailing of any order or communication to the last address given by him shall constitute notice to him and lay him liable for prosecution for failure to obey it whether or not he actually receives the notice. If in this

case the board had mailed his notice of induction to the last address he gave, he would have been without defense to the first count for, constructively presumed to have received his notice, he was under the imperative duty to report for induction at the time named in it, and he did not report. He was, however, acquitted on this count, and we do not have to give it further consideration. The charge made against him under the second count that he did not keep the board advised of an address where mails could reach him states no offense at all. For the regulation invoked expressly provided that the Board will always mail to his last address given, and that he will be conclusively presumed to have received notices sent by the Board to that address. Any failure, therefore, to keep the Board advised of a change of address is not a failure of duty for which he can be indicted as a criminal, it is merely a failure of self protection as a result of which he may find himself subject to indictment as a criminal for failure to obey an order or communication, notice of which he did not actually receive. The demurrer should have been sustained and this count of the indictment should have been dismissed as charging no offense. If, however, I am wrong in this, I think it crystal clear that the government completely failed to show not only beyond a reasonable doubt but by the preponderance of the evidence that defendant willfully and knowingly violated his duty to keep his local board advised of an address where mail would reach him. In the first place he selected the address of the union which he had joined and which keeps close tab on all its members. In the second place he left explicit directions to forward mail to him in care of the N. M. U. in New York. When he got to New York he left the same specific directions with the agent of the N. M. U. and to deliver to him any notices received from the board, and if the agent of the N. M. U. in New York had done what he had been told to do, defendant would have received the notice. It got there while defendant was still in New York and it was not delivered to him, not because of his failure in choosing an address, but because of the fault of the agent of the union in returning the letter to Houston. It just cannot be held that the address he gave was not an address by which mail would reach him when the proof showed that, had the careful directions he gave been carried out, he would

have gotten the mail, and that he was actually contacted through that address. I realize that if the evidence supports the conviction, the fact that to fill a crying need for men he was entering upon a most dangerous service for his country would not save him. But the service he was offering to do and the crying need he was filling, according to the undisputed testimony of Merrell, along with the balance of the evidence furnishes the guide by which to determine whether he was willfully evading a duty or was doing the best he could to keep the board informed of his address while serving his country.

"And here is the place to pay a tribute to our Merchant Marine. Officially this is not one of our fighting forces, but I doubt if there is a more dangerous service. The merchant seaman risks bombs, torpedoes, mines, machine gunning, in addition to the usual perils of the sea, and often faces death in a form more terrible than any known on a battle field. He wears no fancy uniform, no bands play for him, or nobody calls him a hero—I heard of one man who had been torpedoed six times—yet back they go over and over again to their ship."[2]

In my opinion, the prosecution and conviction by which this defendant, while voluntarily serving his country on a most dangerous mission, was stigmatized, sentenced to jail, and in effect marked as a fugitive from duty, was wholly unwarranted and unjust. The judgment of conviction should be reversed and the indictment dismissed. I dissent from the affirmance of the judgment.

---

[2] Britain at War, J. B. Priestley, Harper & Bro.