## BARTCHY *v.* UNITED STATES.

No. 762.   Argued May 12, 1943.—Decided June 7, 1943.

---

*Mr. Bernard A. Golding* for petitioner.

*Mr. Valentine Brookes,* with whom *Solicitor General Fahy, Assistant Attorney General Berge,* and *Messrs. Robert S. Erdahl* and *Richard S. Salant* were on the brief, for the United States.

Mr. Justice Reed delivered the opinion of the Court.

This case presents the question of the sufficiency of the evidence to support petitioner's conviction under § 11 of the Selective Training and Service Act and the regulations made thereunder,[1] for a knowing failure to keep his local board[2] advised of the address where mail would reach petitioner, a registrant under the Act. A second count, on which petitioner was acquitted and which need not concern us further, charged a knowing failure to comply with an order to report for induction into the armed forces. Certiorari was granted because the conviction involved an interpretation of an important regulation under the Selective Service Act.

With the approval of both parties and the court, petitioner was tried by the court without a jury and on conviction was sentenced to imprisonment for sixty days. The Circuit Court of Appeals affirmed, one judge dissenting. 132 F. 2d 348.

---

[1] Sec. 11 punishes with a maximum of five years imprisonment and a fine of not more than $10,000 "any person . . . who in any manner shall knowingly fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations made pursuant to this Act, . . ." 54 Stat. 885, 894. The regulation involved provides: "Sec. 641.3 *Communication by mail.* It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not." 6 Fed. Reg. 6851–52.

[2] § 603, 6 Fed. Reg. 6827.

Petitioner was placed in class 1–A, available for general military service, by Local Board No. 9 in Houston, Texas. He had already been given a final physical examination by the Army. On February 4, 1942, petitioner was advised by his board that his induction would probably take place in twenty or thirty days. He immediately sought employment as a merchant seaman for a short coastwise trip. Employment as messman was secured through the National Maritime Union which had active offices in Houston and in New York. The latter city was the port of destination of the ship *Pan Rhode Island* upon which petitioner first shipped. Bartchy secured a union permit card prior to the voyage and later became a regular member of the union. The *Pan Rhode Island* sailed from Texas City February 11th and petitioner received his certificate of discharge from her employment in New York February 20th.

On February 10th Bartchy advised the board by letter that he was shipping as a seaman on the *S. S. Caliche*. He corrected the name on the same day to the *S. S. Pan Maine*. No notice was given the board as to the ship upon which he actually sailed. In the letter he suggested deferment from induction into military service on the ground of employment in the merchant marine and requested that in case deferment was granted it be addressed to 8045 Harrisburg Boulevard, Houston. This was the office of the National Maritime Union and was different from his address, 7543 Harrisburg Boulevard, previously given the board. Bartchy arranged with the Houston office of the union to forward his induction notice to the union's New York office.

On, or shortly after, February 20, 1942, a notice to report for induction on March 4 was mailed to petitioner. It arrived at the Houston office of the union promptly and was forwarded to its New York office pursuant to the instructions left by petitioner. The record does not show

the exact time the letter reached New York. The notice was returned March 12th to the board by the union in an envelope bearing the union's New York return address and postmarked Houston, Texas, the same day. It was not delivered to petitioner although, as will later appear, he was in New York harbor at the time.

On arrival in New York about February 20th, petitioner talked with Merrell, an executive at that office of the union, and inquired for mail from his local board. None was there. On February 25th through the union he obtained a job on the *S. S. American Packard,* berthed at Hoboken, and was on board until March 11th. Sometime between February 20th, when the notice was mailed at Houston, and March 12th, when it was received by the local board at Houston, the letter was in Merrell's hands in New York at the union office. Bartchy was not advised by Merrell of the receipt of the notice to report for induction. The Federal Bureau of Investigation first sought information from Merrell as to Bartchy's whereabouts on March 10th and 11th. Merrell thereupon informed Bartchy that he was sought after by the F. B. I. and he came into the union office on March 11th and was taken into custody.

Bartchy admitted that he knew that the *American Packard* was bound for a foreign port and that he was willing to make the trip unless the induction notice was received. The ship was not to sail immediately on February 25th and he was not required to sign articles for the trip; that would be requested of him just before sailing and after the examination of the seamen by the federal, particularly naval, representatives. He "had every reason to think" that before sailing date he would have word from the board. Asked what he would have done if he were requested to sign articles for the foreign voyage on March 10th, the day before the arrest, he said that he would have first communicated with the board. Pay

and lodging were earned by Bartchy through his service on the *American Packard*. During his stay on board the *American Packard*, Bartchy did not return to New York union headquarters to inquire for mail.

Merrell testified that in their first conversation petitioner said that he was expecting an induction letter, that he wished immediately to be informed of its arrival and that he asked for advice "on how we handled that type of cases, of men who went to sea." Petitioner also said that he would like to work in the meantime and asked whether he should ship. Merrell told him to continue shipping until the time came to go into the Army. The witness testified that his customary advice was for such men to stay aboard ship "until the induction comes in, and then when the induction comes in, we always arrange, we always get hold of them ourselves for the draft board." When the induction notice arrived in the New York office, it was routed to Merrell and he returned it to the board under the mistaken impression that the *American Packard* had left the harbor bound for a war zone.

As petitioner was acquitted of the charge of knowingly failing to report and submit to induction into the armed forces, we shall not deal of course with the situation of a registrant, so charged, who complied with the duty of keeping his local board advised of his address and failed nevertheless to receive his notice. This petitioner was convicted only of the charge that he knowingly failed and neglected "to keep his local board advised at all times of the address where mail will reach him."

We think the Government correctly interprets the Act, § 11, and the regulation, § 641.3, not to require a registrant who is expecting a notice of induction to remain at one place or to notify the local board of every move or every address, even if the address be temporary. The Government makes the point, however, that a registrant with

knowledge, as here, of the imminence of the posting of the notice "is plainly obligated to keep in close communication with the forwarding address." If this suggestion is meant as a rule of law that at his peril the registrant must at short intervals inquire at his last address given to the board, here 7543 Harrisburg Boulevard, Houston, or at his own forwarding address, here the Maritime Union in New York, we are of the view that the Government demands more than the regulation requires. The regulation, it seems to us, is satisfied when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance.

The District Court and the Court of Appeals concluded that the petitioner had not shown diligence in keeping the board advised of his whereabouts and had affirmatively endeavored to avoid delivery of the communication. We do not think either of these inferences is justified by this record.

The petitioner left with the board an address which in regular course of mail should and did bring the notice to the harbor where petitioner was located. The fact that Bartchy shipped on one ship rather than another to reach New York is immaterial. On arrival there he went to his forwarding address, inquired for mail, told the official in charge he was expecting an induction notice and arranged for notification to him by the union of its arrival. Bartchy failed to receive the notice because of the mistake of the official of the union when the latter concluded, without verification, that the *S. S. American Packard* had sailed. The union had information the registrant was working on that ship.

Petitioner might have been more diligent by telephoning or calling at the union at intervals between the

twenty-fifth of February and the tenth of March but we conclude that he was justified in relying upon the efficiency of this experienced organization to advise him of the arrival of the notice.

*Reversed.*

MR. CHIEF JUSTICE STONE:

The decision of the two courts below that petitioner knowingly failed "to keep his Local Board advised at all times of the address where mail would reach him" is amply supported by uncontradicted evidence.

The address which petitioner gave the Board was that of the Maritime Union in Houston, Texas. Mail would not reach him there because he was not in Houston. Assuming that a forwarding address to a place where mail would reach him, if forwarded, would satisfy the statutory requirement, mail would not reach him at his forwarding address in New York City, for he was not in New York City in the critical time from February 25 to March 11, during which he knew from the advice of the Board that his notice of induction would probably be mailed. He was then living in Hoboken, New Jersey on the *S. S. American Packard,* on which he had sought employment as a seaman for a voyage of many months to the Far East, and which, pending her sailing, was undergoing repairs in Hoboken.

During that time mail would not reach him in New York City, for he was at no time in New York City, and he at no time went or sent there for mail, or inquired whether mail had come for him. Mail would not reach him in Hoboken or on the *American Packard,* or "in New York Harbor," because he had not given either as a forwarding address or given instructions to any one that mail be sent or delivered to him at either place. The courts below were justified in concluding that during a period of some weeks, when he expected to receive the notice of the draft board, and when he was preparing to leave the country for a period of months,

he knowingly failed to keep the Board advised of any address where mail would reach him.   The judgment should be affirmed.

MR. JUSTICE ROBERTS joins in this dissent.