**UNITED STATES of America ex rel. Lloyd A. COLBY, Petitioner,**

v.

**COMMANDING OFFICER, ARMED FORCES EXAMINING AND ENTRANCE STATION BUILDING NO. 116, FORT HAMILTON, BROOKLYN, NEW YORK, Respondent.**

No. 68–C–142.

United States District Court
E. D. New York.
March 8, 1968.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for petitioner Lloyd A. Colby; Morton S. Robson, Jeffrey L. Dissin, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., Eastern District of New York, for respondent; Cyril Hyman, Asst. U. S. Atty., of counsel.

BARTELS, District Judge.

Petitioner, Lloyd A. Colby, seeks a writ of habeas corpus claiming as unlawful his induction into the United States armed forces, resulting from a declaration of delinquency and a I–A classification by Local Draft Board No. 41 of the Selective Service System located in Brooklyn, N. Y. The petitioner and respondent have stipulated that the sole

issue involved is whether Local Board 41 had a basis in fact for declaring Colby delinquent and retaining him as a delinquent and in a I–A classification after receipt of a certificate of pregnancy of Colby's wife, which would otherwise have entitled him to a III–A classification.[1] The judicial review, therefore, is limited to the same test prescribed by the authorities. Cox v. United States, 332 U.S. 442, 448, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

I

The events leading up to Colby's declaration of delinquency are as follows: On March 24, 1965, Local Board 41 classified Colby II–S until his prospective graduation from college in January, 1966. In November, 1965, the Local Board received a DD Form 44, informing the Local Board that Colby had enlisted on November 3, 1965 in the New York Air National Guard, whereupon he was reclassified I–D. The form was fraudulent and had been submitted as a result of Colby's father's fraudulent machinations. On November 12, 1965, the Local Board mailed to Colby at 640 Pelham Road, New Rochelle, N. Y., his address listed with the Local Board, a classification card, SSS Form 110, notifying him of his I–D classification. This was petitioner's home address although he was at college at the time and living at his temporary school address in Bridgeport, Connecticut. In January, 1966 Colby graduated from college as expected, but failed to so notify the Local Board. Pursuant to a request of the appropriate authority, the Local Board's file was sent to the New York City headquarters on February 7, 1966 and was not returned until January 27, 1967. In April, 1966 two F.B.I. agents, having in their possession a Xeroxed copy of the fraudulent DD Form 44 (but not the Selective Service file of Local Board 41), interviewed Colby and advised him of his I–D classification, whereupon Colby informed the agents that he was classified as II–S, not I–D. However, Colby made no attempt to notify the Local Board of his erroneous I–D classification. In June, 1966 Colby wrote to inform the Local Board of his marriage and failed at that time to mention his erroneous I–D classification. On December 27, 1966 the Local Board received a letter dated December 22, 1966 from the F.B.I. advising the Local Board that the DD Form 44 filed on behalf of Colby was fraudulent. This was the first notice that the Local Board had that Colby's I–D classification was incorrect.

On February 14, 1967 the Local Board declared Colby delinquent for failure to keep the Local Board advised of his proper classification and because he was instrumental in furnishing false and misleading information to the Local Board in November, 1965, concerning his I–D classification.

Upon receiving notice of his declaration of delinquency, on February 20, 1967 Colby came into the Local Board's offices and denied any knowledge of receiving a I–D classification card or why he was declared delinquent. The next day, on February 21, 1967, Colby was reclassified I–A. On February 24, 1967 the Local Board received from Colby a certificate of pregnancy of Colby's wife.

1. The 1967 Amendment to 50 App. U.S.C.A. § 460(b) (3) provides that "No judicial review shall be made of the classification or processing of any registrant by the local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction * * *." Whether the amendment was intended merely to bar relief by means of a declaratory judgment for the purpose of overruling Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2 Cir. 1967), or 'also to bar relief by means of a habeas corpus after induction, is a serious question. If the latter, the amendment raises a constitutional problem. Because the Court finds that the petitioner is not entitled to relief upon the merits in any case, it will avoid the constitutional question as unnecessary to its decision (Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114 (1950)).

Thereafter, on June 13, 1967, the Local Board reviewed his file and declined to remove the delinquency declaration, although it did not so inform him. On June 29, 1967 the Local Board mailed to Colby SSS Form 252 ordering him to report for induction on July 12, 1967. This was the same day the father pleaded guilty to the criminal charges against him. Upon Colby's request, his induction was postponed to allow him to appear before the Local Board at its August, 1967 meeting.

At the August meeting the petitioner, accompanied by his father and wife, testified that he never knew of the fraudulent I–D classification until he was informed by the F.B.I. agents in April, 1966. His father testified that he was solely responsible for the fraudulent DD Form 44 and that he had intercepted the Local Board's SSS Form 110 mailed to the son at his listed address in New Rochelle, advising the son of his I–D classification. After this hearing, the Local Board maintained its refusal to remove Colby's delinquency status asserting as reasons that Colby (1) failed to notify the Local Board of his graduation from college in January, 1966, although he knew he was not entitled to a II–S classification; (2) failed to advise the Local Board of his erroneous I–D classification after being advised of such fraudulent classification by the F.B.I. agents in April, 1966; (3) failed to advise the Local Board of the erroneous I–D classification in June, 1966, when he notified the Local Board by writing of his marriage; (4) enjoyed the sanctuary of not being in a draftable classification at least from April, 1966, to which status he knew he was not entitled; and (5) should have been classified I–A in January, 1966 and subsequently inducted, stating that he may not now hide behind events thereafter occurring, i. e., marriage and future fatherhood.

## II

From this record we are to determine whether there was any basis in fact for declaring Colby delinquent and placing him in a I–A classification. The pertinent regulations are 32 C.F.R. § 1625.1 (b), providing that "Each classified registrant * * * shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification such as, but not limited to, any change in his occupational, marital, military, or dependency status, or in his physical condition * * * "; 32 C.F.R. § 1642.4(a), providing that the local board may declare a registrant delinquent whenever he "has failed to perform any duty or duties required of him under the selective service law * * *." with certain exceptions not here relevant; 32 C.F.R. § 1642.12, providing that any delinquent registrant "may be classified in or reclassified into Class I–A or Class I–A–O, whichever is applicable, regardless of other circumstances * * * "; and 32 C.F.R. § 1641.3, providing that it "shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not."

■■■ In essence, the Local Board advanced two basic reasons for declaring Colby delinquent, (1) that he failed to keep the Local Board advised of his proper classification, and (2) that he was instrumental in supplying fraudulent and misleading information to it concerning his I–D classification. It is difficult to find any basis in fact for the Local Board's second reason, predicated upon supplying fraudulent information. Regardless of the Local Board's frustration and, laying aside what the Local Board might have surmised, the only affirmative evidence before it upon this point was that the father was guilty of the fraud. The record must contain some affirmative evidence to support the Local Board's finding. Suspicion and speculation are not sufficient. Dickinson v.

United States, 346 U.S. 389, 396–397, 74 S.Ct. 152, 98 L.Ed. 132 (1953). It would appear self-evident that the selective service law and regulations cannot be employed to punish infractions of the criminal law not constituting a violation of the selective service law. Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2 Cir. 1967). By the same principle, the Local Board may not use the delinquency status to visit the sins of the father upon the son. This would be an unconscionable reprisal totally unauthorized. Items 4 and 5 listed as reasons in the Local Board's written refusal of August, 1967 to remove Colby's delinquency classification, therefore describe no violation of the registrant's duty and hence cannot be considered as a basis for any delinquency classification.

■ But Colby's failure to keep the Local Board informed of his proper classification is in a different category. We need not dwell upon his failure to notify the Local Board of his college graduation since the Local Board knew that his II–S deferment expired automatically in January, 1966. There is a serious doubt whether he was under any duty to inform the Local Board of a fact which its records already revealed. On the other hand, a literal reading of Section 1641.3 would charge Colby with the notice mailed by the Local Board on November 12, 1965 to his New Rochelle address, whether he actually received it or not. Such notice in turn would have imposed upon him an obligation to correct the error beginning in November, 1965. The father stated that he intercepted this notice, but considering the totality of circumstances including the father's criminal conviction, the Local Board had a right to disbelieve the father. See, Witmer v. United States, 348 U.S. 375, 383, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Since there are stronger grounds for the Local Board's classification, we need not rely upon the application of Section 1641.3.

■ Turning to a more obvious breach of duty, the Court finds that Colby's failure to report to his Local Board a fact which would have resulted in the registrant being placed in a different classification, justified the Local Board's declaration of delinquency. Colby knew from the F.B.I. agents in April, 1966 that he was erroneously classified I–D upon the basis of a fraudulent DD Form 44 and that this was an erroneous change in his military status. He therefore had the duty to so advise the Local Board within ten days as required by Section 1625.1(b). He attempts to excuse this delinquency by charging the Local Board with the knowledge possessed by the F.B.I. agents, which he claims was evident from their possession of a Xeroxed copy of the fraudulent DD Form 44. He relies upon the principle that the obligation imposed by Section 1625.1(b) must be reasonably applied, citing Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943); Townsend v. Zimmerman, 237 F.2d 376 (6 Cir. 1956). But such application is determined by objective standards and not by subjective claims. As a matter of fact, the Local Board did not have Colby's file at the time of the F.B.I. visit and was not notified of the fraudulent DD Form 44 until December 27, 1966. The F.B.I. did not represent the Local Board, nor is there any evidence to indicate that it led Colby to believe that it was acting for the Local Board. In view of Colby's prior II–S deferred status, he knew or should have known that having graduated from college, his status should have been changed to I–A. A notification from the F.B.I. of a fraudulent I–D status should have alerted him to the misinformation possessed by the Local Board. He was specifically required by Section 1625.1(b) to report in writing any change in status to the Local Board and not to any other agency. He chose to remain silent. His belief that somehow the F.B.I. would make that report for him or that their knowledge was the Local Board's knowledge, cannot be justified and in fact is irrelevant. Even assuming Colby believed that he was not under any duty to report to the Local Board his erroneous

I–D classification in April, 1966, he had no possible reason to continue in this belief at the time he notified the Local Board in writing in June, 1966 of his marriage. In other words, he was quick to notify the Local Board of favorable information but willing to remain quiet in reporting information which would result in a I–A classification.

One cannot fail to observe that the son in this case is attempting to take every possible advantage of the wrongs committed by the father. While this may not be a basis for a declaration of delinquency, it does not require the Local Board to resolve every possible doubt and inference in favor of the registrant. We find, therefore, that there was a basis in fact for the Local Board's declaration of Colby's delinquency and his classification as I–A. The Congress has declared that "in a free society the obligations and privileges of serving in the armed forces and the reserve components thereof should be shared generally * * *." (50 App. U.S.C.A. § 451(c)).

Application denied. This is an order.