**UNITED STATES of America,
Appellee,**

v.

**Clyde Gene RAMEY, Appellant.**

**No. 73-2525.**

United States Court of Appeals,
Fourth Circuit.

Argued June 3, 1974.

Decided Oct. 1, 1974.

Clarence W. Carter, King, N. C. [Court-appointed counsel], for appellant.

N. Carlton Tilley, Jr., U. S. Atty., (Ronald V. Shearin, Asst. U. S. Atty., on brief), for appellee.

David Rosenberg, Cambridge, Mass., for amicus curiae Committee for Legal Research on the Draft in support of reversal of the conviction below, by leave of the court (William J. Taylor, Law School of Harvard University, Cambridge, Mass., on brief).

Before HAYNSWORTH, Chief Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Clyde Gene Ramey appeals his convictions in a non-jury trial on two counts of a three-count indictment charging (1) that he had failed to report for an Armed Forces Physical Examination, and (2) failed to keep his local board informed of his current mailing address.[1] We conclude as to the former that Ramey either substantially complied with his duty to report for his physical or, if he did not, was excused by misinformation supplied to him by a local board in California. As to the latter, we conclude that Ramey complied with his duty to provide a current address through which mail "may be . . . reasonably expected to come into his hands in time for compliance." Bartchy v. United States, 319 U.S. 484, 489, 63 S.Ct. 1206, 1208, 87 L.Ed. 1534 (1942). We therefore reverse both convictions.

Ramey registered with Local Board No. 87, Dobson, North Carolina, on June 8, 1970. Thereafter he filed with the board his Selective Service Classification Questionnaire giving his current mailing address as 713 Marshall Street, Mt. Airy, North Carolina, and designating the "Member of the household who will always know my address" as Mamie G. Ramey, Route 5, Mt. Airy, North Carolina (July 16, 1970). Later he changed his current mailing address to Route 5, Mt. Airy, North Carolina 27030. To this address the Board mailed, on June 30, 1972, an Order to Report for Armed Forces Physical Examination. The Or-

1. The first of three counts—failure to report for induction—was dismissed by the district judge.

der required that Ramey appear at 6:30 a. m. on July 18, 1972, in Dobson, North Carolina. Instead of appearing at Dobson, North Carolina, Ramey appeared at the local board in Downey, California, on July 18, 1972. He filled out SSS Form 6, Request for Duplicate Registration Certificate or Notice of Classification, listing as his address 8109 San Vincente, South Gate, California. He did not indicate in the space provided whether this address was "a permanent change of address." According to testimony at trial by FBI Agent Lowe, who interviewed Ramey on March 6, 1973, Ramey stated that he also attempted to obtain his physical at that time but that he was told by an employee of the board in California that he would have to return to North Carolina.[2]

Local Board 87 mailed a duplicate registration certificate to Ramey at the South Gate, California, address on August 22, 1972. On September 6 they sent him a Current Information Questionnaire and, on September 21, an Order to Report for Induction. The latter communication was returned on October 3, stamped "Moved—Address unknown" and "Moved, left no address." It was then mailed to Ramey in care of Mamie Ramey, Route 5, Box 233, Mt. Airy, North Carolina, and was not returned.

The local board received their September 6 questionnaire on October 17. It gave defendant's current mailing address as Prince Edward Motel, 490 Pearl, Buffalo, New York.

With respect to that address the government offered the testimony of FBI Agent Lowe that Ramey told the agent that during the "short period of time"

he was in Buffalo he was "staying in the streets, mainly," that "[h]e didn't have any address," and that he sent the Prince Edward Motel address to the Board because he "knew some people there and he felt like they might forward some mail to him if he received any." He did not at any time, however, check by the motel to see if mail had arrived. Agent Lowe also stated that Ramey had "indicated that he always received mail at his mother's home at Route 5, Mount Airy, and that any time that he wasn't there, that she would forward his mail to him." Transcript at 67.

The Board had previously recognized that this was apparently true: in a letter to Ramey's mother, the Board had noted that "apparently you have his address, so just be sure to forward any mail that we send to him."

I

32 C.F.R. § 1628.8 provides:

(a) Any registrant who has received an Order to Report for Armed Forces Examination (SSS Form 223) and who is so far from his own local board that reporting to his own local board would be a hardship may, subject to the provisions of this section, be transferred for armed forces examination to the local board having jurisdiction of the area in which he is at that time located.

While Ramey's declaration that he requested a physical in California and was informed that he would have to return to North Carolina is clearly self-serving hearsay, it was offered by the government through the testimony of Agent

---

2. Agent Lowe testified as follows:
Q. Continue on with what he indicated to you concerning events that transpired out in California.
A. He said that when he was in California that he had received some information that he had to report for a physical examination in Charlotte, North Carolina, and that he was in California without any money, and also about this same time had lost his draft card and went to the Local

Draft Board in Vail, California, and asked about getting a physical there. And he was told that he must return to North Carolina in order to get the physical. And he told me he decided this was ridiculous for him to have to do that and that he had no intention of traveling back across the United States in order to get his physical.
Transcript at 67–68.

Lowe and is uncontradicted.[3] Upon it there arises the well established "misleading information" defense. United States v. Burton, 472 F.2d 757, 758–762 (8th Cir. 1973); United States v. Jacques, 463 F.2d 653, 657–659 (1st Cir. 1972); United States v. Timmins, 464 F.2d 385, 386–388 (9th Cir. 1972); United States v. Cordova, 454 F.2d 763, 765 (10th Cir. 1972); United States v. Burns, 431 F.2d 1070, 1074 (10th Cir. 1970); see United States v. Davis, 413 F.2d 148, 150–151 (4th Cir. 1969).

■■ In the context of this case, the defense means that the government may not burden the defendant with the ignorance or indifference of its California draft board clerk. Since Ramey presented himself to the California board on the very day he was directed to report to his local board at Dobson, North Carolina, the refusal, without reason, to grant him the benefit of the transfer regulation effectively put him in default. Ramey was entitled to correct information and advice. United States v. Cordova, supra, 454 F.2d at 765. Instead, he was erroneously told, in effect, that he could not bring himself into compliance in California but must do the impossible—get back to North Carolina the same day. Although 32 C.F.R. § 1628.8 is not self-executing, we think that where a registrant presents himself for a physical examination 3,000 miles away from his local board on the day he has been ordered to appear, and where there is no suggestion of any valid reason for denial of the transfer privilege, that a subsequent prosecution for failure to report for a physical examination cannot be sustained.

The government's response does not challenge the sufficiency of the "misleading information" defense nor its applicability, given the truth of Ramey's assertions. Instead the government relies on its assertion that Ramey has failed to establish that any such conversation occurred. Introducing no evidence to contradict the FBI agent's narrative, the government relies solely on the presumption of regularity which attaches to administrative proceedings, citing Chaney v. United States, 406 F.2d 809, 812–814 (5th Cir.), cert. denied, 396 U.S. 867, 90 S.Ct. 128, 24 L.Ed.2d 120 (1969).

■■ We do not understand the rule of evidence affording presumptive validity to administrative acts and proceedings as meaning that a government agent is presumed always to have given correct information and advice. In Chaney, the registrant sought to infer from a clerk's ignorance of a regulation that the board itself must also have acted ignorantly and erroneously. Quite properly it was held that the registrant must overcome the presumption that the board acted in accordance with its own rules. 406 F.2d at 813.

■■ Here there is no attack upon board action or conduct. It is not suggested that either the California or North Carolina board did anything wrong but only that Ramey was misled by the California clerk into believing he could not comply with his duty to report for a physical without returning to North Carolina. We think there is no presumption as to what a draft board clerk may or may not have told a registrant. This case is like Cordova, Jacques, and Burns, supra, where, as here, other evidence tended to establish the fact that the registrant contacted the board,[4] and only the registrant's testimony established the substance of the conversations and provided a basis for a finding of misinformation. Where "nothing in the record casts doubt on the verity of the evidence . . . the testimony must be accepted." Cordova,

---

3. We do not suggest the government was bound by its agent's testimony. Certainly the United States Attorney could have offered evidence, e. g., the clerk of the California board, to contradict what Ramey told Agent Lowe—if that were the truth of the matter.

4. Government Exhibit 5 shows that Ramey was present in the office of the local board in California on July 18, 1972.

*supra,* 454 F.2d at 765. Having misinformed the registrant of an important procedural right the utilization of which would have brought him into compliance with its order for physical examination, the Selective Service System cannot now seek to hold him accountable for noncompliance with that order.

## II

32 C.F.R. § 1641.1 prescribes:

(a) It shall be the duty of every classified registrant until his liability for training and service has terminated, to keep his local board currently informed in writing of (1) the address where mail will reach him . . . .

The Supreme Court, in interpreting Section 1641.1(a)'s almost identical precursor,[5] concluded:

The regulation, it seems to us, is satisfied when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance.

Bartchy v. United States, *supra,* 319 U.S. at 489, 63 S.Ct. at 1208. The district judge apparently based his finding of guilt as to the third count on the fact that Ramey, while in Buffalo, New York, sent to his local board an address where he did not reside and at which he never checked for mail.[6] But Ramey was not charged with supplying the Board with a false address. Indeed, 50 U.S.C.App. § 462 delineates no such offense. All that Ramey was charged with was a failure to comply with the duty put upon him by 50 U.S.C.App. § 462 and 32 C.F.R. § 1641.1(a) to provide an address "where mail will reach him."

■ That duty was fulfilled by Ramey since the Board at all times had the address, provided by appellant, of his mother in Mt. Airy. The evidence tends to establish that on at least one occasion—the order to report for preinduction physical examination—a communication mailed to this address was forwarded to Ramey in California. In a second instance, when the notice of induction sent to the California address was returned, it was remailed to Mamie Ramey's address and was not returned. Even though Ramey did not report for induction, nothing in the record establishes that he failed to receive the order. Under these circumstances *Bartchy's* requirement of "a chain of forwarding addresses" is met. United States v. Chudy, 474 F.2d 1069 (9th Cir. 1973); United States v. Burton, *supra;* United States v. Ebey, 424 F.2d 376 (10th Cir. 1970). *See also* Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953), rev'g per curiam 195 F.2d 441 (5th Cir. 1952). As in *Burton, supra,* "the defendant was entitled to rely on his mother's address to meet his duty of informing the board of 'the address where mail will reach him.'" 472 F.2d at 763. Here that address was obviously effective for there is nothing in the record to suggest that Ramey ever failed to get any communication from his local board.

■ Moreover even though no chain of forwarding addresses is shown, if communications mailed to various addresses furnished by the registrant reach him in time for compliance there is no violation of the duty to keep the local board informed of his current address. United States v. Ebey, *supra.* "A registrant is not required to . . . report to the board every move that he makes." *Id.* at 377 of 424 F.2d; United States v. Chudy, *supra.*

We conclude that the record does not support the charge that "there was deliberate purpose on the part of petitioner

---

5. Section 641.3 provided: "It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him." 319 U.S. at 485 n. 1, 63 S.Ct. at 1206.

6. The registrant in *Bartchy* also failed to check the address for mail. In *Bartchy* the defendant's omission was of greater import because the board's notice *was* forwarded to that address. Here, no notice was sent or forwarded to the Buffalo address.

not to comply with the Selective Service Act or the regulation issued thereunder." Ward v. United States, *supra*, 344 U.S. at 924, 73 S.Ct. at 494.

Reversed.