**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard Alan GLOVER,
Defendant-Appellant.**

No. 74–2387.

United States Court of Appeals,
Ninth Circuit.

March 11, 1975.
Rehearing Denied May 9, 1975.

Warren R. Williamson, Trial Atty., Federal Defenders of San Diego, San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Michael E. Quinton, Asst. U. S. Atty., for plaintiff-appellee.

Before DUNIWAY and CARTER, Circuit Judges, and WEIGEL,* District Judge.

## MEMORANDUM

Defendant was convicted in a court trial of the knowing failure to keep his local draft board advised at all times of the address where mail would reach him, in violation of 50 U.S.C. App. § 462 and 32 C.F.R. § 1641.3 (revised as of July 1, 1973, and renumbered 32 C.F.R. § 1641.-1(a)(1)).

Defendant registered with his local draft board on February 13, 1970. In April, he returned his classification questionnaire, giving 4274 Toch Street, San Diego, as his home address and his grandmother's name and address in Nahunta, Georgia, as the name and address of the person who would always know his address.

On May 30, 1970, defendant moved from 4274 Toch Street, San Diego, to 6451 Salizar Court in the same city. His mother testified she left a forwarding address for him at the post office.

On June 21, 1972, two years later, the local board mailed to defendant at the Toch Street address an order for him to report for a physical examination on July 24, 1972. The letter was returned unopened, marked "Moved, not forwardable."

On August 3, 1972, letters were then mailed to defendant's stepfather at the Toch Street address and to his grandmother at her Georgia address. The letter to his stepfather was returned unopened and the letter to his grandmother was not returned or answered.

* Honorable Stanley A. Weigel, United States District Judge, Northern District of California, sitting by designation.

Defendant's mother testified that on August 14 she called the local board and told a person at the board she had received the letter mailed to her mother and gave the person at the board her address as the place where defendant could be reached. The address was given early in the conversation and she was not sure it had been recorded by the person at the board. She further testified she told her son (the defendant) to expect the board to contact him at her address.

The defendant did not report for his physical examination on July 24, 1972. He was not located until about August 1973, a year later.

■ This case is controlled by the hornbook rule that upon appeal of a conviction in a criminal case the evidence must be considered in a light most favorable to the government and the findings of fact of a trial judge (or jury) may not be set aside unless clearly erroneous.

■ The conviction was on Count III, alleging that "From June 26, 1972, to August 11, 1972 . . . Glover . . did knowingly fail and neglect to perform a duty required of him in that he then and there failed to keep his local board advised of his current mailing address." The case presented a simple issue of fact.

The case was tried without a jury. Among other findings at the time of conviction, the trial judge found:

". . . the defendant merely just proceeded . . . in a casual disregard of any obligation that he might have and just didn't bother to notify anybody about anything.

"The defendant knew people were looking for him and he never ever surfaced. He never contacted the Selective Service, even though he had that information from his mother; and I think, under these circumstances, giv-

en the passage of time . . . I don't have any trouble at all saying . . . beyond a reasonable doubt, that he is guilty as to count 3."

In addition, the trial judge did not credit most of the testimony of the defendant's mother concerning her call to the local board on August 11 or 14, and her lack of knowledge as to why the board was looking for her son. The board's records contradicted much of her testimony. The trial judge observed her on the stand, had the board's records before him, and was entitled to disbelieve her.

Although the letter requesting the defendant to report for a physical was mailed June 21, 1972, the defendant's mother did not call the board until August 11 or 14, 1972, two to three weeks after the date set for the defendant to report (July 24, 1972), and only after a second batch of letters had been sent out.

Even after the mother called, no line of communication with the defendant had been established, for the defendant in no way attempted to ascertain why the board was looking for him. Either he knew that he was being sought for a physical and was avoiding communication with the board, or the "line of communication" from his grandmother's address, to his mother, to him, was inadequate.

From the time the defendant registered on February 13, 1970, the defendant never advised the local board of any change of address, or that he could no longer receive mail at the address of 4274 Toch Street, San Diego, California. Nor did he advise the United States Postal Service of a forwarding address where mail might reach him.[1]

The judgment is affirmed.

WEIGEL, District Judge (dissenting).

I dissent.

1. The dissent places substantial reliance upon our decision in United States v. Chudy, 474 F.2d 1069 (9 Cir. 1973). However, the court in that case relied upon 32 C.F.R. § 1642.-41(b) which, as noted in Chudy, was revoked

effective December 10, 1971, 36 F.R. 23383 (1971). The events in the present case all occurred subsequent to the revocation of § 1642.41(b). Chudy is therefore not in point.

Under the majority opinion, appellant is left to stand convicted for actions which are not a crime and for which he was not indicted.

Appellant's conviction was for knowing failure to keep his local draft board advised of the address where mail would reach him during the period of June 26, 1972, to August 11, 1972. The failure was charged to be in violation of 50 U.S.C. App. § 462 and 32 C.F.R. § 1641.3 (revised as of July 1, 1973 and renumbered 32 C.F.R. § 1641.1(a)(1). Neither the evidence nor the trial court's own findings establish that appellant was guilty of any such failure. Indeed, the evidence and those findings demonstrate the absence of proof establishing guilt beyond a reasonable doubt.

I agree that there is ample evidence to support a finding that appellant failed to keep his local board advised of changes in his home address during the period of June 26, 1972, to August 11, 1972. However, this failure does not suffice to support the conviction under 32 C.F.R. § 1641.3, because it is uncontroverted that appellant did furnish the board with his grandmother's address as that where mail would reach him. The furnishing of such an address—not advice of changes in home address—is what is required.

The relevant law is made by the decision in United States v. Chudy, 474 F.2d 1069 (9th Cir. 1973), which, reversing a conviction under 32 C.F.R. § 1641.3, stated:

The failure to furnish the draft board with a home address does not constitute a violation of the regulation with which the appellant was charged. United States v. Munns, 457 F.2d 271 (9th Cir. 1972). A registrant is not required to report his every move to the board. He is required to provide a suitable means for being reached by the board. Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943); United States v. Ebey, 424 F.2d 376 (10th Cir. 1970). (474 F.2d at 1070.)

There is not a scrap of evidence to show that the address of his grandmother in Georgia, as furnished by appellant, was not a suitable means for his being reached by the board which, for reasons never clarified in the record, elected to send only one communication to that address. That communication, seeking information as to appellant's whereabouts, was mailed on August 3, 1972. It resulted not only in the appellant's mother calling the board on August 14, 1972, but in appellant's being advised of it.[1] The able trial court so found.

The defendant knew people were looking for him and he never ever surfaced. He never contacted the Selective Service, even though he had that information from his mother. . . . (R.T. 89.)

Thus, the uncontradicted evidence and the trial court's own findings demonstrate that the board's communication, sent to the person appellant listed as someone who would always know his address, did in fact reach him. This is all that is required to warrant a reversal. United States v. Chudy, *supra*.[2]

Chudy reversed the conviction in that case because there, as here, the registrant did furnish an address where mail would reach him. The same result should be reached here for the same reason.

The Chudy court cited § 1642.41(b), which imposed duties upon draft boards, as the basis for criticizing the failure of the draft board in that case to send mail to the address given by the registrant pursuant to § 1641.3. In the case at bar, there was no such failure. Even if § 1642.41(b) had still been in effect, it could have made no difference.

---

1. Appellant's mother testified she called the board on August 14, 1972. (R.T. 61–62.) The board's secretary testified that the call was made three days earlier. (R.T. 23.)

2. The majority opinion asserts (at p. 391, n. 1) that Chudy is not in point because the court in that case relied upon 32 C.F.R. § 1642.41(b), which was revoked prior to the events in the present case.

It is true that that particular Section was so revoked. It is also irrelevant.

The only section applicable to both cases is 32 C.F.R. § 1641.3. It is this Section alone which bottomed the charge in both and upon which conviction was based in both.

In addition to informing appellant that his draft board was looking for him, his mother telephoned the board. The majority opinion makes much of the undisputed right of the trial court to resolve a conflict between what the mother testified she told the board (*e. g.*, her lack of knowledge as to why the board was looking for her son) and the records of that body. Of course, that resolution was within the province of the trial judge. The relevant point, apparently disregarded by the majority, is this: Regardless of what the mother may or may not have said, it is undisputed that the board's communication sent to the address provided by appellant did come to his attention.

The situation here is readily distinguishable from that in United States v. Read, 465 F.2d 1118 (9th Cir. 1972). There the letter sent by the draft board to the person the registrant had listed as someone who would always know his address was returned marked "Address unknown".

It is apparent from its findings that the trial court actually convicted appellant for his "failure" to call his local board in order to ascertain why they were looking for him during an indefinite period after August 11, 1972. However, blameworthy that failure may have been, it was not the charge against defendant and was not, in itself, any violation of any law. Appellant was charged with failing to provide a suitable mailing address, not with failing to call his board. No order to report was sent to appellant's grandmother's address. Had the board sent such an order to that address and had that order been disregarded by appellant, the case would be very different.

Appellant's conduct does appear to have been less than forthcoming and, therefore, to justify disapproval. Still, the day has not come—and I trust it never will—when a court's disapproval may properly be substituted for solid evidence requisite to conviction for a crime charged. The majority opinion, I am forced most reluctantly to conclude, re-

cites a scattergun assortment of irrelevant facts as the basis for affirmance. It fails to come to grips with those which are controlling, relevant, and uncontradicted. And, if it prevails, it results in a most disturbing denial of the most elemental rights which should protect appellant against conviction for a crime he did not commit.

The conviction should be reversed.