**John Stephen GRETTER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 522–69.**

United States Court of Appeals,
Tenth Circuit.

March 6, 1970.

---

Milnor H. Senior, Denver, Colo., for appellant.

Gordon Allott, Denver, Colo. (James L. Treece, U.S. Atty., and Milton C. Branch, Asst. U.S. Atty., Denver, Colo., on the brief), for appellee.

Before LEWIS and SETH, Circuit Judges, and BRATTON, District Judge.

BRATTON, District Judge.

This is an appeal by John Stephen Gretter from his conviction upon an information charging him with having failed to advise his local draft board of

the address where mail would reach him. 50 App. U.S.C.A. § 462(a).

The evidence at trial established that appellant had duly registered with his local board in 1964 immediately following his eighteenth birthday, giving as his address the home of his parents with whom he lived. He was subsequently ordered to report for a physical examination, but, due to overweight, he was found medically unacceptable.

In the summer of 1967 he was ordered to submit to and successfully passed a second physical examination. He was given a 1–A classification as available for service.

Appellant testified at trial that in December of 1967 he left his parents' home following a disagreement with them. He left no forwarding address with them. Nor did he inform his draft board of any change of address.

He remained in the Denver area for approximately two months and then traveled West, ultimately stopping in San Francisco, where he stayed until the end of October, 1968. Following this he returned to his parents' home in Denver for a brief period and then moved to another address in Denver.

Shortly after he left his parents' home, the appellant contacted a friend of his who lived across the street from his parents. His understanding with his friend was that the friend would communicate to him anything appellant needed to know without telling appellant's parents where he was unless absolutely necessary. From time to time, Gretter called his friend from San Francisco and gave him both addresses where he could receive mail and phone numbers where messages could be left for him. The fees for the calls were charged to the telephone number of Gretter's parents.

At no time during his sojourn in San Francisco did Gretter have a permanent address, and, while his parents apparently knew he was in San Francisco, they had no knowledge of where in San Francisco he could be located.

The only evidence introduced at trial by the Government was certainly properly identified portions of the appellant's Selective Service file. These documents showed that on March 13, 1968, his local draft board mailed to his parents' address appellant's order to report for induction into the armed forces. The envelope containing the order was returned unopened to the board with an accompanying letter from appellant's father. In the letter appellant's father stated that he believed an order to report was enclosed in the envelope. He further related that his son had left home in December of 1967 and that he had had no contact with the boy since then. He advised the board that he had tried unsuccessfully to convey to his son the draft notice and that he thought his son might be in San Francisco.

Further shown was that subsequent inquiries by the board to appellant's last known employer and to the state drivers license bureau produced only the address of his parents' home as appellant's last listed address. The board also attempted to notify him that his induction papers had been returned with the notation "failed to report", but this communication was also returned to the board marked "address unknown."

Also admitted into evidence was the document reflecting that appellant was reported to the United States Attorney on April 12, 1968, as delinquent for having failed to report for induction and for having failed to keep the local board informed of his current address.

An F.B.I. agent located appellant in a hospital in San Francisco in October of 1968 and told him he had been ordered to report for induction. Introduced from his file was the letter Gretter immediately wrote to the draft board, telling them where he was and informing them that he planned to return to his parents' home in Denver following his release from the hospital.

As indicated above, appellant did return to his parents' home near the end of October. He subsequently moved to another address, and, while he furnished

his parents with this address, he did not inform his draft board.

Among the questions presented on appeal are whether it was prejudicial error to submit to the jury the order to report for induction and the board's subsequent letter to appellant which stated that his induction papers had been returned with the notation "failed to report" and whether those portions of his father's letter to the board and the Delinquent Registrants Report that referred, respectively, to his order to submit and failure to do so should have been deleted before those documents were seen by the jury.

Appellant's defense to the charge was lack of intent. His evidence attempted to show that there had been no wilful and knowing violation of the law and that, at the most, he had only been negligent in failing to keep his board informed of his whereabouts. His claim is that those portions of his Selective Service file which tended to show the commission of a crime other than the one with which he was charged were hearsay and irrelevant, and their improper introduction into evidence was prejudicial to his defense.

■ Initially, it should be noted that generally an entire Selective Service file or cover sheet as it is commonly called may be admitted into evidence if it properly indicates each element of the offense charged. Brandon v. United States, 381 F.2d 727 (10th Cir. 1967).

■ After careful questioning of the prosecution about the need for the introduction of the documents in appellant's cover sheet, the court in the present case excised all those documents and references in documents that it considered prejudicial. The court then properly ruled that the portions challenged here were admissible on the basis that, even though they tended to show the commission of another crime, they were material to the issue of whether Gretter had failed to provide the board with an address where he could be reached. See Hanks v. United States, 388 F.2d 171 (10th Cir. 1968), cert. denied, 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131 (1968).

The defendant next contends that the motion made by him at the close of the Government's case for judgment of acquittal was erroneously denied, for the Government's evidence failed to show the necessary intent to violate the Act.

■ The record reflects that the prosecution's case-in-chief showed appellant's registration, his departure from his home address without informing anyone of a new address where mail could reach him, unsuccessful attempts to discover his new address, his classification as a delinquent, and his subsequent communication to the board after contact with the F.B.I. Construing this evidence in the light most favorable to the prosecution, Speers v. United States, 387 F.2d 698 (10th Cir. 1967); Adams v. United States, 375 F.2d 635 (10th Cir. 1967), cert. denied, 389 U.S. 880, 88 S. Ct. 117, 19 L.Ed.2d 173 (1967); Cartwright v. United States, 335 F.2d 919 (10th Cir. 1964), all the elements of the crime, including intent, had been shown. See Kokotan v. United States, 408 F.2d 1134 (10th Cir. 1969).

■■ Seemingly asserted is the contention that the motion should have been granted at the close of the evidence, since appellant introduced evidence that he could be contacted through his friend. Initially, it should be noted that the motion was not renewed at the close of the evidence. Normally, this constitutes a waiver of such a motion, Smith v. United States, 403 F.2d 689 (5th Cir. 1968); Lucas v. United States, 355 F.2d 245 (10th Cir. 1966), cert. denied, 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687 (1966), except where the appellate court is convinced by an appraisal of all the evidence that the verdict is palpably wrong. Maxfield v. United States, 360 F.2d 97 (10th Cir. 1966), cert. denied, 385 U.S. 830, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). The proof in this case was sufficient to take the case to the jury, which was properly instructed on specific intent and the necessity that appellant's failure to keep the board informed

of his current address was a wilful and knowing failure.

During the course of his closing argument, defense counsel mentioned the mode of punishment that could be imposed should Gretter be convicted. In instructing the jury, the court told the jury it was not to consider the matter of punishment in arriving at a verdict, adding that no such admonition would be necessary if counsel had not made his statement.

It is contended that this instruction, to which no objection was made, could be construed as a criticism of defense counsel and therefore was prejudicial to appellant. Suffice it to say that this contention is utterly lacking in merit. The admonition was proper under the circumstances, no objection to it was registered, and no prejudice to the appellant has been shown.

Appellant's final argument to the effect that the prosecution argued a matter not in evidence by referring to appellant's change of address following his return to Denver is clearly refuted by the record, which reflects that appellant himself testified to this effect. Further, the cross-examination which elicited this information properly bore directly on the issue of intent.

Affirmed.