UNITED STATES of America,
Appellee,

v.

Stephan WOLOSZCZUK, Defendant-
Appellant.

No. 71–1306.

United States Court of Appeals,
First Circuit.

Heard March 7, 1972.

Decided May 1, 1972.

Charles Donelan, Worcester, Mass., by appointment of the Court, with whom James E. Wallace, Jr., and Bowditch, Gowetz & Lane, Worcester, Mass., were on brief, for defendant-appellant.

Frederic R. Kellogg, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This appeal arises from a conviction, D.C., 328 F.Supp. 696, for failure to comply with the order of a local selective service board to report for alternate service, a violation of 50 U.S.C. App. §§ 456(j), 462 (1970). Appellant, having sought both I-O (conscientious objector) and IV-D (ministerial) classifications, was classified I-A by his local board. On appeal, the Massachusetts State Appeal Board granted the I-O status but rejected appellant's claim for a ministerial exemption. Pursuant to 50 U.S.C. App. § 456(j), he was ordered to report for civilian work in the national interest but refused to obey this order. He attacks his conviction on the grounds that the State Appeal Board devoted inadequate time to the consideration of his case and probably applied a legally erroneous standard in rejecting his IV-D claim.

In the classification questionnaire filed with his local board on October 11, 1967, appellant stated that as of November 1 he would be devoting full time to the ministry. On October 20 he filed SSS Form 150, claiming, as a Jehovah's Witness, to be a conscientious objector. The local board classified him I-A, and reaffirmed his classification after appellant's personal appearance on December

5. The board's summary of the personal appearance states that appellant sought a IV-D exemption because he was a Jehovah's Witness minister and spent over 100 hours each month calling on people house to house in addition to attending Jehovah's Witness meetings and instructing from the platform at the Friday meeting. In January of 1968 appellant noted his appeal of the board's decision and officially informed the board of his appointment as a Vacation Pioneer for a period ending April 30, 1968.

At the monthly Appeal Board meeting on February 16, 1968, the Appeal Board considered appellant's claim and 234 others in a 3½ hour meeting. The clerk of the Appeal Board testified at trial that it was her practice to group the appeals into categories and attach brief summaries and recommendations to each file. Very little time was spent on what she considered "frivolous" appeals,[1] but she stated that the Board spent more time with I-O and IV-D appeals. She did not recall how much time was spent on appellant's case, but testified only as to general practice. Her summary and recommendation attached to appellant's file read:

"WOLOSZCZUK, Stephan L.B.#38 (Worcester) #19-38-49-135 1-A to 4-D (Reg.) Age 18. dob. 9/19/49. Reg. filed Form 150 and appeals for 4-D class. He is a Jehovah's Witness. He is presently a *VACATION* (Not REGULAR) PIONEER until Apr. 30, 1968. (Elig. for I-O, but not 4-D)."

Appellant argues that the mere label of "Vacation Pioneer" is an insufficient and erroneous basis for the denial of a IV-D,[2] and that the Appeal Board likely employed this erroneous standard in *judging his claim.* He relies on Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971) and Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955) for his

---

1. She defined "frivolous" appeals as those sought solely for the purpose of delay, for example, in order to delay processing and allow time for a registrant to enlist.

2. He relies on, e. g., United States v. Tichenor, 403 F.2d 986 (6th Cir. 1968); United States v. Simms, 285 F.Supp. 981 (D.Del.1968); United States v. Dillon, 294 F.Supp. 38 (D.Or.1968).

contention that the possibility of reliance on an erroneous standard vitiates his classification and subsequent order to report.[3] He also argues that the brevity of the meeting and the number of appeals indicate that inadequate consideration was given his claim.

While in this posture the case raises interesting and important questions on the scope of *Clay* and *Sicurella* and on what must be shown to overcome the presumption of administrative regularity, because of appellant's total lack of prejudice, we do not reach these issues. Sometime in January 1968, prior to the consideration of his administrative appeal, appellant was involved in an automobile accident which gave rise to financial liabilities and resulted in his discontinuing the prior pace of his ministerial activities. On February 26, 1968, he wrote to his local board as follows:

> "This is to let you know that due to financial difficulties encountered as a result of an automobile accident that I had in January '68 *I am unable to continue in the full-time ministry* and have obtained full-time employment to defray these expenses. However, I am still an active member of the Worc. South Unit of Jehovah's Witnesses and am still a preacher of the 'Good news of the Kingdom.' If circumstances permit, *I shall wish to resume the pioneer ministry in the future.*" (Emphasis added.)

A report of oral information, dated March 27, 1968, indicated that since January appellant had been devoting only 20 hours per month to ministerial

work while working full time at a food store. Other reports in his selective service file show that this arrangement continued at least until March 29, 1969, after he had refused to indicate a preference among three alternate employment positions suggested by the board. Although this information of changed circumstances was not before the Appeal Board, it demonstrates that appellant was not entitled to IV–D status[4] and thereby renders harmless any procedural or substantive error by the Board.

Appellant does not dispute the absence of prejudice, but contends that under *Clay* and *Sicurella* the possibility of an illegal ground of decision vitiates the administrative proceeding, notwithstanding the lack of prejudice. We do not believe that these cases mandate the adoption of such a prophylactic rule of reversal. Both cases rely on the contingency of prejudice that arises from the possibility of a board's reliance on an erroneous standard. Where the *ratio decidendi* is unknown such a contingency is in no way reduced by the existence of alternative and legally proper grounds of decision or a "basis in fact" for the determination. *See* Clay v. United States, *supra,* 403 U.S. at 701, 91 S.Ct. 2068. In contrast to this, appellant's changed circumstances in the instant case totally eliminate the possibility of prejudice that would result from the use of an erroneous ground of decision. Furthermore, long before failing to report for alternative service, appellant in effect withdrew his claim as a full-time minister. The constitutional and statutory requirements of the selective service law

---

3. In both *Clay* and *Sicurella*, legally erroneous advice from the Department of Justice, coupled with an inability to determine the ground relied upon by the board, raised the possibility that the erroneous advice formed the *ratio decidendi*. Under the rationale of Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), this possible reliance on an improper ground was sufficient reason to nullify the board's decision.

4. To qualify as a "regular or duly ordained minister," one must preach and teach the principles of his religion as a *vocation.* 50 U.S.C. App. § 466(g). "Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under [50 U.S.C. App. § 456(g), the ministerial exception]." Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132 (1953).

**1258**

should not be applied prophylactically without due regard for the particular facts of each case.[5]

Lest the decision in this case be misinterpreted, we emphasize that our holding is a narrow one, limited to the facts of this case. We have *not* held that a board's decision can be validated by facts which were not before the board or that a registrant must affirmatively prove how he was prejudiced by every illegal board action. Once a reasonable possibility of prejudice exists, the burden rests on the government to prove that in fact no actual prejudice resulted. Steele v. United States, 240 F.2d 142 (1st Cir. 1956). In this case that burden clearly has been met.

Affirmed.

5. *Compare* Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955) *with* Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960). *Also compare* United States v. Edwards, 450 F.2d 49 (1st Cir. 1971) *with* United States v. Curry, 410 F.2d 1297 (1st Cir. 1969).