**UNITED STATES of America,
Appellee,**

v.

**Norman J. JACQUES, Defendant-
Appellant.**

**No. 71–1391.**

United States Court of Appeals,
First Circuit.

Heard April 4, 1972.

Decided July 7, 1972.

7. 332 F.Supp. at 308.   (footnotes omitted).

John G. S. Flym, Cambridge, Mass., with whom Flym, Geller, Miller & Taylor was on the brief, for appellant.

Constance L. Messore, Asst. U. S. Atty., with whom Lincoln C. Almond, U. S. Atty., was on the brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Appellant was tried before a jury and convicted under 50 U.S.C. App. § 462(a) for refusal to submit to induction into the armed forces. He raises a number of issues on appeal. Our resolution of two of these issues requires that the conviction be reversed and the case remanded to the district court for further proceedings.

Appellant registered with his local board in Pawtucket, Rhode Island, in 1961 and was classified I–A (available for military service). He held a II–S (student) deferment briefly in 1964, and after being reclassified I–A in that year was ordered to report for a preinduction physical examination. At the examining station on October 8, 1964, appellant was found unacceptable for induction under applicable medical standards in light of a disability in his right leg, apparently the result of an automobile accident in 1963. The "Statement of Acceptability," in addition to reporting this finding of physical disqualification, noted that re-examination in six months was justified. However, appellant was neither reexamined nor reclassified as a consequence of this preinduction physical. The I–A classification was retained until September 1965, when, as a member of the Rhode Island legislature, appellant

was classified IV–B (official deferred by law).

After appellant no longer held state office he completed a Classification Questionnaire sent to him by the local board. He returned this form on January 6, 1969, noting under disqualifying physical conditions his "permanent partial disability of the right leg." At the January 8 meeting of the local board he was classified I–A and ordered to report for a physical examination. Appellant did not appeal this classification nor did he request a personal appearance. He was subsequently found physically acceptable and was ordered to report for induction. On September 2, 1969, appellant refused to take the symbolic step forward, for which he was indicted, tried, and convicted. We deal initially with those claims that do not compel reversal.

I

Appellant urges on three separate grounds that the Military Selective Service Act, 50 U.S.C. App. §§ 451–473, is unconstitutional. His arguments find their roots in The Report of the President's Commission on All-Volunteer Armed Forces (Gates Commission Report) (February 1970) which recommended, *inter alia*, that the nation switch from a draft system to an all-volunteer army. Appellant argues that conscription at below-average pay levels violates the constitution because (1) it imposes a tax arbitrarily on those of draft age, (2) an all-volunteer force would be a less burdensome alternative, and (3) Congress has no power to compel service in an undeclared overseas war at artifically low pay. We have previously recognized the constitutionality of the current system of conscription, United States v. Diaz, 427 F.2d 636 (1st Cir. 1970), and we are not persuaded by appellant's arguments to the contrary.

■ The Act is not a taxing statute, and any indirect effect on the earning power of draftees is not constitutionally violative. The statutory provisions were passed not under Congressional taxing power, but pursuant to the Constitution's grant of power to raise and support armies. Art. 1, § 8. *See* United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Selective Service Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918). This power is broad and sweeping, Lichter v. United States, 334 U.S. 742, 755–758, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948), and must necessarily include the method of conscription.

"As the mind cannot conceive an army without the men to compose it, on the face of the Constitution the objection that it does not give power to provide for such men would seem too frivolous for further notice . . . . Further it is said, the right to provide is not denied by calling for volunteer enlistments, but it does not and cannot include the power to exact enforced military duty by the citizen. This however but challenges the existence of all power, for a governmental power which has no sanction to it and which therefore can only be exercised provided the citizen consents to its exertion is in no substantial sense a power." *Selective Service Draft Law Cases, supra* at 377–378, 38 S.Ct. at 161.

■ The constitutional grant of power to raise and support armies, Art. I, § 8, is explicitly no more dependent on a declaration of war than are other powers enumerated in that section. *See, e. g.,* United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966), cert. denied, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132 (1967). The only expressed limitation is that appropriations not be used for longer than two years. That there has been no formal declaration of war does not, therefore, affect the Congressional power of conscription. United States v. Perrin, 431 F.2d 875 (9th Cir. 1970). See United States v. O'Brien, *supra* 391 U.S. at 377, 88 S.Ct. 1673, 20 L.Ed.2d 672. *But see* Holmes v. United States, 391 U.S. 936, 936–949, 88 S.Ct. 1835, 20 L.

Ed.2d 856 (1968) (Justice Douglas dissenting).

## II

■ Appellant complains of a due process violation by the court's refusal to allow his attack on the constitutionality of the war in Southeast Asia. Since, as noted *supra,* the power to raise an army is separate from the power to wage war, the court correctly excluded appellant's evidence. United States v. Hogans, 369 F.2d 359 (2d Cir. 1966). *See also* Massachusetts v. Laird, 451 F. 2d 26 (1st Cir. 1971).

## III

■ The district court also excluded evidence that the appellant, in refusing induction, relied on the advice of counsel that the induction order was invalid. He asserts this was error because such evidence was relevant to his specific intent to violate the law. As we stated in United States v. Couming, 445 F.2d 555, 557 (1st Cir.), cert. denied, 404 U.S. 949, 92 S.Ct. 291, 30 L.Ed.2d 266 (1971), the essential elements of intent are knowledge of the requirements of the law and deliberate non-compliance. Appellant testified that he was informed and was fully aware that his actions would constitute a felony. Since it is evident that he was aware of his legal obligation and had a deliberate purpose not to comply, *see* United States v. Rabb, 394 F.2d 230 (3d Cir. 1968), his attorney's advice amounts to no more than a statement that he would probably have a successful defense to a criminal prosecution. The proffered evidence does not negate specific intent and was properly excluded. *Cf.* United States v. Boardman, 419 F.2d 110 (1st Cir. 1969), cert. denied 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970).

## IV

■ Appellant further contends that the local board improperly classified him I–A on January 8, 1969. He points out that he had been found physically unacceptable in his only previous physical, that other matters in his file buttressed rather than rebutted his physical condition, and that consequently he was entitled to a physical deferment classification (I–Y or IV–F). However, as the government points out, appellant did not pursue the avenues of administrative relief. A registrant may not ordinarily attack the basis in fact for his classification unless he has exhausted his administrative remedies. United States v. Pringle, 438 F.2d 1216 (1st Cir. 1971). The purposes of exhaustion would have been served by further factual development and application of the board's expertise, *see* McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), and the Selective Service System should be given an opportunity to correct its own mistakes. United States v. Quattrucci, 454 F.2d 58 (1st Cir. 1972), cert. denied, 406 U.S. 960, 92 S.Ct. 2071, 32 L.Ed.2d 347 (1972). Appellant is thus foreclosed from attacking his classification unless his failure to exhaust is excused, see Part VI, *infra,* in which case he would be entitled to an acquittal and his claim of *improper classification* would be rendered moot.

## V

■ Appellant claims additionally that the members of the board relied unduly on the executive secretary's prescreening of files. We would not, of course, condone a total delegation. Again, however, appellant's claim is precluded by failure to exhaust, United States v. Quattrucci, *supra; cf.* DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968), aff'd by an equally divided Court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969); United States v. Tobias, 447 F.2d 227 (3d Cir. 1971), unless the failure is excused, in which case, see *infra,* the claim would be moot.

## VI

Finally, appellant contends that he was deprived of his administrative rights of personal appearance and ap-

peal, and thereby of due process, by the misleading advice of the board's executive secretary, Miss Lallouette. The record evidence presents strong factual support for this contention. According to the uncontradicted testimony of the appellant, upon receipt of his Notice of Classification in January 1969 he telephoned the local board to press his claim for a physical deferment. He spoke with Miss Lallouette, who told him that it was not up to the board to decide medical issues, but that such decisions rested with the army. Appellant asked if he could speak with the board concerning his medical circumstances, whereupon the executive secretary reiterated that the board did not pass on such questions, but that he would have to report for his army physical and that the board would go by the results of that examination. The government had both the opportunity and incentive to cross-examine on this issue but did not.

Appellant's testimony was implicitly corroborated by Miss Lallouette's testimony regarding her conception of board responsibilities and policy. In explaining why appellant was not considered for I–Y status in January of 1969, she stated that the board did not pass on "physical reasons." She further testified that since the previous medical report noted that reexamination in six months was justified, appellant "could not" be classified I–Y, but had to be classified I–A and ordered for another physical. Further corroboration lies in appellant's own actions: he filed no written requests for administrative review following his classification, but telephoned the board after he was found medically acceptable. At that time, however, he was informed that it was too late to request a personal appearance or appeal.[1]

The Selective Service regulations provide every registrant the opportunity to appear in person before his local board, 32 CFR § 1624.1(a) (1967), and to appeal a classification to an appeal board, 32 CFR § 1626.2(a) (1967), if the registrant files a timely written request. These procedural rights are not limited to claims of a specified nature, and there is absolutely no authority for a board to deny these rights where a registrant seeks to press a claim for a physical deferment.[2] Further, a local board has an affirmative duty not to mislead a registrant, but to give him correct information and advice. *See, e. g.,* Powers v. Powers, 400 F.2d 438 (5th Cir. 1968); Steele v. United States, 240 F.2d 142 (1st Cir. 1956). When misleading advice provided by a Selective Service official or employee serves to deprive a registrant of a substantial procedural right, the registrant has been denied due process and his induction order is invalid. *E. g.,* United States v. Williams, 420 F.2d 288 (10th Cir. 1970); Bejelis v. United States, 206 F.2d 354 (6th Cir. 1953); United States v. Bryan, 263 F.Supp. 895 (N.D.Ga.1967).

The government raises several arguments in opposition to appellant's contention. Assuming arguendo that the facts are as appellant testified and that he did rely on Miss Lallouette's statements, the government argues that any deprivation of procedural rights was rendered nonprejudical by the subsequent finding of physical acceptability. This contention is without merit. When appellant passed the subsequent physical he had already been denied the rights of administrative appearance and appeal.

1. Actually, the board did have authority, under 32 CFR § 1626.2(d) (1967) to permit an appeal even though the period for taking an appeal had lapsed.
2. *See* Miller v. United States, 388 F.2d 973, 977 (9th Cir. 1967) where the court stated in an analogous context:
   "[I]t would constitute a violation of due process for a local board to be able to handle prima-facie conscientious-objector claims in such different modes as to deprive one claimant of the statutory right of appeal (as well as the regulational rights of appearing and being heard) and to leave another claimant with these incidents."

*See* United States v. Ford, 431 F.2d 1310, 1313 (1st Cir. 1970). The local board had both the authority and sufficient evidence to classify appellant I–Y, and its decision not to do so certainly could have been reversed by the appeal board. See 32 CFR § 1626.2b(a) (1967). Since such a determination might have obviated the need for a subsequent examination, the importance of this right of appeal cannot be minimized.[3] Moreover, appellant need not specify how he would have used these rights or how such use would have aided his cause in order to complain of their deprivation. Simmons v. United States, 348 U.S. 397, 406, 75 S.Ct. 397, 99 L.Ed. 453 (1955). Once a registrant has shown deprivation of a substantial procedural right, the burden rests on the government to show absence of prejudice beyond a reasonable doubt. United States v. Woloszczuk, 458 F.2d 1255 (1st Cir. 1972); United States v. Fisher, 442 F.2d 109 (7th Cir. 1971).

Also without merit, and for reasons too obvious to warrant discussion, is the government's contention that appellant is precluded from raising this issue by failure to exhaust his administrative remedies. Compare United States v. Quattrucci, *supra* (finding that the registrant was not misled).

The government also intimates that the evidence was insufficient as a matter of law to merit jury consideration. We disagree. Appellant's testimony was unimpeached and his statements were implicitly corroborated by the board's executive secretary. He was advised in the Notice of Classification

"FOR INFORMATION AND AD-
VICE GO TO ANY LOCAL
BOARD,"

and reliance on the advice of the executive secretary is not unreasonable as a matter of law. *See* United States v.

Williams, *supra*, 420 F.2d at 292. While the evidence on appellant's side is strong, the issue was not directly focused upon by the parties or the court below. We prefer not to resolve issues of fact on appeal where the district court has not fully considered them. We therefore reverse appellant's conviction and remand the case to the district court. On this record the government may seem to have little chance of overcoming appellant's evidence, but that is a matter for prosecutorial evaluation of other evidence.

Reversed; remanded for new trial.

---

3. *See also* Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970), where the Court stated:
   "Because of the narrowly limited scope of judicial review available to a regis-

trant, the opportunity for full administrative review is indispensable to the fair operation of the Selective Service System."