UNITED STATES of America,
Appellee,

v.

Karl Erick BURTON, Appellant.

No. 72–1176.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1972.

Decided Jan. 4, 1973.

Robert J. Milavetz, Minneapolis, Minn., for appellant.

Joseph M. Livermore, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendant, Karl Erick Burton, was convicted of violating 50 U.S.C. App. § 462 by (1) knowingly and wilfully failing to report for induction (Count I), and (2) unlawfully, wilfully and knowingly failing to keep his local board informed of his current address (Count II).

On July 31, 1969, Burton received an order to report for induction. He did not report and the order was postponed. On August 27, 1970, the board received the defendant's application for conscientious objector status. On October 22, 1970, the defendant's local board mailed a letter to his listed current mailing address in Palo Alto, California. The letter stated that his request for classification as a C.O. had been denied because no change in circumstances beyond his control had been established. It also stated that he was to report for induction on November 2, 1970. The defendant's indictment on both counts grew out of his failure to report on November 2, and his failure to notify his board of a new current mailing address.

## COUNT I

The defendant argues that we must reverse his conviction under Count I. He reasons that his induction order was invalid because his local board misled him, thus depriving him of important rights.

Misleading conduct by the local board may be raised as a valid defense for refusal to submit to induction. See, United States v. Timmins, 464 F.2d 385 (9th Cir. 1972); United States v. Cor-

dova, 454 F.2d 763 (10th Cir. 1972); United States v. Fisher, 442 F.2d 109 (7th Cir. 1971); United States v. Burns, 431 F.2d 1070 (10th Cir. 1970). However,

> "* * * [t]o establish such a defense, the defendant must show [1] that the local board conveyed false or misleading information to him and ▮ that he was in fact misled by the information or conduct of the board. ▮ Further, he must show that his reliance on the misleading information was reasonable in the sense that he was entitled to rely upon the information without making further inquiries of the board. * * * "

United States v. Timmins, *supra*, 464 F. 2d at 387.

The government's case showed that in January, 1969, the defendant appeared before his local board with regard to an application for a IV–A deferment, which was subsequently denied. According to the minutes of the meeting, the defendant stated that:

> "* * * he had personal feelings about killing. Doesn't want to take any life. Personal conflict and better to avoid situation. Board entered into this discussion and asked him if [he] were intending to file for a C.O. and told him that they didn't feel that he would qualify for a C.O. on the basis of what he had told them. Registrant had informed the board that his feelings about war were not related to religious beliefs as he had none. Also that if he were in a situation, kill or be killed, he would kill. * * * ".

At the close of the government's case, the defendant moved for a judgment of acquittal on the basis of the minutes of the meeting, arguing that the board had incorrectly told him that he was not entitled to a C.O. status. The trial court correctly denied this motion.

We do not think the defense of "misleading advice" by the local board had been established at the close of the government's case. The only evidence of such was the minutes of the meeting, and they failed to establish that the defendant had in fact been misled by the board's advice.

During his own case, the defendant took the stand and described the meeting with the draft board. He told the board that he was ethically and morally opposed to war, but that his beliefs did not have religious basis. The board did not ask him to explain in detail the basis of his beliefs but, instead, told him he would not qualify for a C.O. status because his beliefs were not religious. At the trial, the defendant explained what he had meant when he said that his views were not religious:

> "What I meant by 'religious', I think was that—related to formal religion, you know, denomination to sectarian training, you know, to an obviously religious upbringing, and so on, in terms of, like established churches."

He also explained that his beliefs were partially based on Christian principles.

The defendant testified that because he believed the advice of the board that he was not entitled to a C.O. status, he did not apply for one until he became acquainted with the decision of the Supreme Court in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

The government, in cross-examination, did not impeach the testimony of the defendant with regard to any of these statements, nor did it introduce any rebuttal testimony.

At the close of his own case, the defendant did not renew his motion for judgment of acquittal. Instead, he submitted a suggested instruction with regard to the "misleading advice" defense. This instruction was rejected. At the end of the trial court's instructions to the jury, the defendant objected and stated:

> "In addition, of course, I would request a charge to the effect that if the defendant did not file a form 150 for conscientious objector status, that because he was misled by the advice

of the local board, then they must find him not guilty."

The trial court denied this request. We believe it erred in doing so.

■ The defendant has made a sufficiently strong case for a defense based on misleading advice to entitle him to jury consideration. See, United States v. Jacques, 463 F.2d 653, 659 (1st Cir. 1972).[1] First, the defendant's testimony indicates that he was given incorrect and misleading advice by his local board. In United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), decided long before the meeting between the defendant and the board, the Court stated that to determine eligibility for C.O. status, the "task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, *in his own scheme of things*, religious." *Id*. at 185, 85 S.Ct. at 863. (Emphasis added.) The view of this Court has been that, under *Seeger*, the extent of a registrant's formal or traditional religious training is not determinative of his right to C.O. status. Cassidy v. United States, 428 F.2d 585, 587 (8th Cir. 1970); United States v. Levy, 419 F.2d 360 (8th Cir. 1969). *Cf.*, In Re Weitzman, per curiam, 426 F.2d 439, 440, 441 n. 2, 454, 459, 460 n. 5 (8th Cir. 1970) (separate opinions of J. J. Blackmun, Lay and Heaney). We stated in Cassidy v. United States. *supra*, 428 F.2d at 587–588:

"* * * [T]he Supreme Court * * * has abandoned a traditional definition of 'religious belief,' adopting a much broader definition * * *. [R]eligious belief includes a 'sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption . . . .' * * *

" 'Admittedly the parallelism test * * * may significantly reduce the vitality of the personal moral code test, *to the extent that pacifistic beliefs, if sincerely and deeply held may be defined as religious* regardless of their source.' [United States v. Levy, supra 419 F.2d at 367 (Emphasis added.)]"

■ Here, the defendant's moral and ethical opposition to war would not preclude the defendant from becoming a C. O., if he sincerely held these views and if they occupied a place which was "in his own scheme of things" religious. The defendant stated that, in his view, his beliefs were not religious. But the Supreme Court has cautioned that "very few registrants are fully aware of the broad scope of the word 'religious' * * *, and accordingly a registrant's statement that his beliefs are nonreligious is a highly unreliable guide for

1. The government argues that the "misleading advice" defense does not present a jury question because it involves the propriety of administrative action. We agree that initially a court must decide whether the advice of a local board is "misleading" for this determination will necessarily involve an interpretation of the Selective Service laws. However, factual determinations must also be made with respect to the credibility of the witness and the weight of the evidence. See, United States v. Bender, 469 F.2d 235 (8th Cir. 1972); United States v. Lowell, 437 F.2d 906 (9th Cir. 1971). Furthermore, it must be determined whether the defendant was in fact misled by the board, and whether his reliance on the board was reasonable under the circumstances.

We see no reason why these factual questions should not be answered by a jury unless the defendant presents facts which entitle him to relief as a matter of law. See, United States v. Jacques, 463 F.2d 653, 659 (1st Cir. 1972). Compare, United States v. Timmins, 464 F.2d 385 (9th Cir. 1972); United States v. Cordova, 454 F.2d 763 (10th Cir. 1972); United States v. Burns, 431 F.2d 1070 (10th Cir. 1970).

The government also states that the defendant's requested instruction was inadequate because it did not explicitly refer to Count I. We disagree. The defendant made it sufficiently clear during the course of the trial that his defense of "misleading advice" applied only to Count I.

those charged with administering the exemption." Welsh v. United States, *supra*, 398 U.S. at 341, 90 S.Ct. at 1797. According to the defendant, the board did not go beyond the defendant's own statement and inquire into the basis of his beliefs as they should have done. Since the board did not inquire into these matters, it could not properly evaluate them. Thus, we conclude that the board did not have a proper basis for concluding that the registrant's views would not qualify him for a C.O. status and improperly advised him concerning this matter.[2]

Thus, under United States v. Seeger, *supra*, the advice was incorrect at the time it was given. The natural effect of such advice would be to mislead a registrant into believing that his application for C.O. status would be useless. See, United States v. Burns, 431 F.2d 1070, 1074 (10th Cir. 1970). *Cf.*, United States v. Fargnoli, 458 F.2d 1237 (1st Cir. 1972).

■ Second, we cannot say, as a matter of law, that the defendant was not in fact misled by the advice of his board. The defendant's testimony that he did not apply for a C.O. status until Welsh was decided because he relied on the advice of the local board was neither impeached nor contradicted. At the very least, it was sufficient to create a jury question.

Finally, we cannot say as a matter of law that the defendant's claimed reliance on the board's statement was unreasonable. The Court in United States v. Fisher, *supra*, 442 F.2d at 114, stated:

" * * * [T]he simple answer * * * is that the Local Board should not only be required to adhere to the formal requirements of the regulations, but it should also *be required to refrain from erroneous and prejudicial representations to a registrant.* [Emphasis included.] It is not unreasonable for a registrant to seek advice and information concerning his classification and rights under the Selective Service Regulations from the Local Board. Indeed, it should be noted that the notice of classification form,

---

2. In United States v. Timmins, *supra*, 464 F.2d at 387, the Court stated:
"The classification of registrants is not an adversary proceeding between the local board and the registrant. United States v. Greene, 220 F.2d 792 (7th Cir. 1955). The registrant is not an antagonist, but rather is a young man dealing with his own government without the aid of counsel in an area of the law which can be extremely technical. He must be able to rely upon the local board to deal with him fairly and to offer him assistance when necessary. *The selective service system can operate fairly only when the local board, before classifying a registrant, is fully advised of the relevant facts relating to the registrant's circumstances. The board must consider all evidence in the registrant's file.* 32 C.F.R. § 1623.1(b) * * *. While the registrant himself necessarily bears primary responsibility for keeping the local board informed of his status, *the local board has an obligation to insure that its determinations are based upon complete information, and that all of the registrant's rights are fully respected.* To this end, the local board has a cru-

cial responsibility to assist a registrant who shows himself lacking in ability to advance his claims and maintain his rights. * * * " (Emphasis added.) 32 C.F.R. § 1621.11 states:
"A registrant who claims to be a conscientious objector shall offer information in substantiation of his claim on a Special Form for Conscientious Objector * * * which, when filed, shall become a part of his Classification Questionnaire (SSS Form No. 100). The local board, upon request, shall furnish to any person claiming to be a conscientious objector a copy of such Special Form for Conscientious Objector * * *."
The importance of these special forms is that they require the registrant to answer comprehensive questions relating to all facets of his claim. See, United States v. Turner, 421 F.2d 1251, 1255 (3rd Cir. 1970). Through regulations such as this and court decisions, a careful procedure has been established to insure that a claimant will not be hastily classified. It is equally important to insure that the claimant does not receive hasty advice which can be as damaging as an improper classification.

Selective Service Form 110, as revised May 25, 1967, specifically states: 'FOR INFORMATION AND AD-ADVICE GO TO ANY LOCAL BOARD.' *Certainly, then, a registrant has a right to rely on the representations of the Board* or its agent and the Board has a duty to avoid or refrain from prejudicial representations to a registrant." (Emphasis added.)

United States v. Goodman, 1 SSLR 3239 (N.D.Ill.1968).

■ Since we believe that the defendant's case was sufficiently strong to require instructions on the defense of "misleading advice," the case must be reversed and remanded for a new trial. The defendant, however, asks that we enter a judgment of acquittal. We do not believe this to be the appropriate disposition under the circumstances. The issue involved is not just a failure of the government to prove its own case. Instead, the defendant has raised a complex defense to the failure to submit to induction. The full facts relating to this defense were not before the District Court when the defendant made his motion for judgment of acquittal at the close of the government's case. Since the defendant asked to go to the jury rather than renewing his motion for judgment of acquittal at the close of his own case, the District Court did not have any opportunity to fully consider and pass on the sufficiency of the evidence presented by the defendant.

"* * * While the evidence on appellant's side is strong, the issue was not directly focused upon by * * * the court below. We prefer not to resolve issues of fact on appeal where the district court has not fully considered them. We therefore reverse appellant's conviction and remand the case to the district court. On this record the government may seem to have little chance of overcoming [defendant's] evidence, but that is a matter for prosecutorial evaluation of other evidence." [3]

United States v. Jacques, *supra,* 463 F. 2d at 659.

## COUNT II

■ The defendant also argues that there is insufficient evidence to support his conviction under Count II. The basis of that conviction was that the defendant had not complied with 32 C.F.R. § 1641.3,[4] which states:

"It shall be the duty of every registrant to keep his local board advised at all times of the address where mail will reach him."

We agree with the defendant on the basis of the decisions of the Supreme Court in Ward v. United States, 344 U. S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953), rev'g, 195 F.2d 441 (5th Cir. 1952), and Venus v. United States, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961), rev'g, 287 F.2d 304 (9th Cir. 1960).[5] See also, Bartchy v. United

---

3. The defendant also contends that even if he was not misled by the local board, there was insufficient evidence to sustain his conviction under Count II and that the court erred in instructing the jury in other respects. These contentions are without merit. See, United States v. Lee, 458 F.2d 32 (9th Cir. 1972); United States v. Garrity, 433 F.2d 649, 652 (8th Cir. 1970).

4. On appeal, the government argues that the defendant was convicted for violating 32 C.F.R. § 1641.7 which requires a registrant to keep his board informed of his "home" address. Our review of the record convinces us that the conviction was

based solely on the violation of 32 C.F.R. § 1641.3.

5. In Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953), rev'g, 195 F.2d 441 (5th Cir. 1952), the Court of Appeals had affirmed the registrant's conviction for knowingly failing to furnish his draft board with an address where mail might be delivered to him in violation of 32 C.F.R. § 1641.3. Letters sent to the registrant at his listed current mailing address were returned with the notation "left no address." The board attempted to communicate with the registrant through the person listed as always knowing his whereabouts. That

States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943). Under these cases "[a] registrant is not required to remain at one place or report to the board every move that he makes. The regulation is satisfied if a 'good' address is furnished. Cf. Kokotan v. United States, 408 F.2d 1134 (10th Cir. 1969)." United States v. Ebey, 424 F.2d 376, 377 (10th Cir. 1970).[6]

■ In the present case, the defendant moved for a judgment of acquittal on Count II at the close of the government's case. At that time, the evidence showed that the defendant had furnished the board with the address of his mother as the person who would always know his whereabouts. It also showed that the board had not attempted to contact the mother in order to reach the defendant. In view of the cases cited above, the defendant was entitled to rely on his mother's address to meet his duty of informing the board of "the address where mail will reach him."

■ The government argues, however, that the defendant waived review of the sufficiency of the evidence on Count II because he offered his own evidence and failed to renew his motion for judgment of acquittal at the close of his own case. We disagree. It is not proper to apply the waiver doctrine here where the trial court, with all the facts before it, erred in not granting the defendant's motion for judgment of acquittal at the time it was made. See, United States v. McIntyre, 467 F.2d 274, 275 n. 1 (8th Cir. 1972). See generally, C. Wright, Federal Practice and Procedure: Criminal §§ 463, 469.

We reverse and remand to the District Court with instructions to it to enter a judgment of acquittal on Count II, and to grant the defendant a new trial on Count I.

person did not know the registrant's address.

However, the record indicated that the registrant had given his employer's address to the draft board, and that he had submitted evidence to show that he could have been contacted at his employer's address during the period of his alleged delinquency. The registrant argued that he had relied on this address to furnish the board with an address where mail might reach him. The Supreme Court reversed the conviction in a short per curiam opinion stating:

"The record does not support the charge that * * * there was deliberate purpose on the part of the petitioner not to comply with the Selective Service Act or the regulation issued thereunder."

*Id.* at 924, 73 S.Ct. at 494.

In Venus v. United States, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961), rev'g, 287 F.2d 304 (9th Cir. 1960), the Court of Appeals affirmed the registrant's conviction for violating 32 C.F.R. § 1641.3. One judge dissented, primarily arguing that the registrant should have been able to rely on meeting the requirements of the regulation by having furnished the board with the address of his employer and his parents—the persons who would always know his whereabouts. The Supreme Court reversed in a short per curiam opinion citing the *Ward* case.

6. In United States v. Ebey, 424 F.2d 376 (10th Cir. 1970), the Court of Appeals reversed the conviction of a registrant for violating 32 C.F.R. § 1641.3. While the board was not able to reach the defendant through his current listed mailing address because he had moved, the board did eventually reach him through other addresses he had furnished.

Compare, United States v. Read, 465 F.2d 1118 (9th Cir. 1972); United States v. Booth, 454 F.2d 318 (6th Cir. 1972); United States v. Buckley, 452 F.2d 1088 (9th Cir. 1971); United States v. Read, 443 F.2d 842 (5th Cir. 1971); Gretter v. United States, 422 F.2d 315 (10th Cir. 1970); Kokotan v. United States, 408 F.2d 1134 (10th Cir. 1969). In these cases, convictions of registrants for violating 32 C.F.R. § 1641.3 were affirmed. In each of them, the local board had attempted to reach the registrant through the address of his employer or the person who would always know his whereabouts.