**Thomas Lee YORK, Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 73–1854.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1974.

Decided April 18, 1974.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Thomas Lee York was indicted on March 2, 1964, for violating the Selective Service laws. 50 U.S.C. App. § 462. Count I charged that he wilfully and knowingly failed on or about May 1, 1963, to keep his local draft board informed as to his current mailing address so that mail could reach him; Count II charged that he wilfully and knowingly neglected to comply with an order for induction on June 24, 1964.[1] The case was not prosecuted for nearly a decade, however, due to York's absence from the

United States. On October 12, 1973, a jury convicted York on the first count but acquitted him on the second. He brings this appeal, contending principally that he had furnished the draft board a legally sufficient address and thus the conviction cannot stand. We agree and reverse.

York testified that in late 1962 while a graduate student at Duke University, he felt a strong compulsion to go into the bush country of Canada. He wrote his draft board on February 10, 1963, stating that he and his wife were then in Canada with the intentions of becoming Canadian citizens, and listing an address in Ottawa, Ontario. On March 5, 1963, the board forwarded a current information questionnaire addressed to York at this Ottawa address. York completed this questionnaire and responded to the part calling for a mailing address, as follows:

1. Name(s) and address(es) of person(s) other than wife who will always know your address nobody

(cf attached letter)

In an attached letter, York elaborated:

Starting in 3 days and for the next 4 or 5 years I will be living a nomadic life along the following route: from within 75 miles of Bathurst, New Brunswick, on a line with Cape Breton Is., northeast across the Gulf of St. Lawrence by coracle and overland through Newfoundland, then north along the Labroador [sic] Highlands to Hudson Strait and across to Baffin Is. where I plan to winter with the Dorset Eskimoes; then up Baffin Is. (which by snowshoe will take about 2 years) to Pond Inlet and across to Devon and Ellesmere Islands, from thence to Lands End and the start of the Polar Cap, where I will deposit mss [sic] and either die or return. Should I return I will perhaps at that time apply for Canadian citizenship.

---

1. This appears to be a typogrhpaical error in the indictment, since he had been ordered to report on June 24, 1963.

Until that time, there are no mail routes handy.

My wife I will deposit at a cabin approximately 75 miles south of Bathurst, my point of departure. More exact location would place it in the midst of the Serpentine Mountains. The Canadian National RR runs within 25 miles of it, and that is its closest link with civilization. So she also will have no address.

The only stable address I can give is that of my parents, Mr & Mrs H. C. York who live at Rt. 3, Bx 390, Little Rock, Ark.

Even though York advised that he would not remain in Ottawa, the board on March 18, 1963, sent to the Ottawa address an order for him to report for an armed forces physical examination at Little Rock, Arkansas. His wife received this notice on April 5, 1963, when she returned to Ottawa from New Brunswick to pick up her mail. She wrote the board advising of her present inability to reach her husband. Upon receipt of this letter from Mrs. York the board mailed a notice of delinquency to the same Ottawa address. York had been declared a delinquent because of his failure to report for the physical examination and his failure to request permission from his local board to leave the United States. On May 17, 1963, the board issued an order requiring York to report for induction. This order was mailed to the return address that Mrs. York had used in her latest communication to the draft board, 66 Upton Street, Moncton, New Brunswick.

York testified that the Moncton, New Brunswick, address used by his wife in her letter to the draft board was not his address but that of a friend whom he had visited on one occasion. The testimony also established that while in the wilderness country, York received mail from his parents through a one-man railroad-telegraph station. However, he did not receive either the order to report for his physical examination, the notice of delinquency, or the induction order, since, although his wife had received the first two documents, she returned them to the draft board. He lived in the wilds of New Brunswick until he joined the United Church of Canada in 1964 and thereafter began the study of the ministry of that faith, ultimately being ordained in 1967.

We are presented the direct question whether York unlawfully failed "to keep his local board informed as to his current address where mail would reach him." [2] We considered a similar situation recently in United States v. Burton, 472 F.2d 757 (8th Cir. 1973), where the defendant-appellant had also furnished his local draft board with the address of his mother as the person who would always know his whereabouts. In upholding the defendant's contentions that the address was sufficient, we then explained:

> We agree with the defendant on the basis of the decisions of the Supreme Court in Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953), rev'g, 195 F.2d 441 (5th Cir. 1952), and Venus v. United States, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961), rev'g, 287 F.2d 304 (9th Cir. 1960). See also, Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943). Under these cases "[a] registrant is not required to remain at one place or report to the board every move that he makes. The regulation is satisfied if a 'good' address is furnished. Cf. Kokotan v. United States, 408 F.2d 1134 (10th Cir. 1969)." United States v. Ebey, 424 F.2d 376, 377 (10th Cir. 1970). [472 F.2d at 762–763 (footnotes omitted).]

Here the record shows that York furnished a good address—that of his par-

2. The applicable regulation specifies that, "It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him." 32 C. F.R. § 1641.3.

ents—and that his mother did in fact keep in touch with him by mail.

Without a showing by the prosecution that the local board mailed any notice to the address York gave to the board this conviction should not stand under the "good address" principle stated in *Burton*. Under these circumstances, we reverse the conviction and the three-year sentence imposed upon York.

Reversed.