**The UNITED STATES**

**v.**

**Rodney Richard HILL.**

**No. 73 CR 519.**

United States District Court,
E. D. New York.

Jan. 16, 1974.

Robert A. Morse, U. S. Atty., by Thomas R. Maher, Asst. U. S. Atty., for plaintiff.

Edward N. Leavy, Leavy, Shaw & Horne, New York City, for defendant.

## MEMORANDUM DECISION

COSTANTINO, District Judge.

This is a criminal prosecution charging Rodney Richard Hill with knowingly failing to report for his Armed Forces physical examination, in violation of 50 U.S.C. App. § 462(a); 32 C.F.R. § 1628.-16 (count one) and knowingly failing to report for induction, in violation of 50 U.S.C. App. § 462(a); 32 C.F.R. § 1632.-14 (count two). Defendant waived a trial by jury, and the case was tried to the court on September 12, 1973. Decision was reserved pending the receipt of post-trial memoranda.

There is little dispute as to the facts in this case. Defendant registered with Selective Service Local Board Number 54 in Long Island City, New York in 1964 and indicated that he was attending college with an expected graduation date of June 1967. No confirmation of such attendance was received by the Local Board and in May 1965 he was classified 1–A and ordered to report for a preinduction examination in September 1965. Defendant failed to report. In October 1965 the Local Board received a letter from defendant to the effect that he was studying and working abroad and he requested that he be given a student deferment. After receiving confirmation, the Local Board granted defendant the deferment.

In October 1966 the Local Board was notified that defendant was a full time student at Parsons College, Fairfield, Iowa. His student deferment was extended to October 1967. Defendant thereafter failed to reply to the Board's request for current information. He was accordingly reclassified 1–A in January 1968.

On January 31, 1968 the Local Board received a request for an occupational deferment from defendant as he was employed as a Recreation Specialist at the Kilmer Job Corps Center, Edison, New Jersey. A letter from his supervisor described his position as requiring a "full-time effort to socially rehabilitate and enhance the lives of economically and culturally disadvantaged young men." His contribution was described as "invaluable" and his induction would cause a "tremendous loss" to the program. The Board granted the occupational deferment in February 1968 to run until February 1969.

In January 1969 the Local Board received a request for another occupation-

al deferment as defendant was then employed as a resident Counselor-Lecturer with the SEEK Program of the City University of New York. According to the letter from the Director of the SEEK Residence Hall, defendant was in charge of one of the floors of the Residence Hall, counseling college students and assisting in their adjustment to college life. The Board granted defendant a deferment until February 1970.

In January 1970 the Local Board sent defendant a Current Information Questionnaire. No answer was received from the defendant. Defendant was therefore placed in the 1–A classification and a notice was sent to him. No appeal was ever made from this classification.

In February 1970 defendant was sent an order to report for a preinduction examination and he failed to report. On March 30, 1970, however, he appeared in person at his Local Board and requested a deferment on the ground that he contributed to the support of his child who was living with its mother. He was provided a Dependency Questionnaire to complete and was requested to provide proof of support. Defendant failed to fill out the questionnaire or return any further information, but on April 16, 1970 Sandra LaVerne Sams, the child's mother, wrote to the Local Board and advised that the Queens Family Court had ordered defendant to pay $10.00 per week for the child's support. She did not indicate whether the payments were being made. She further notified the Board on September 16, 1970 that the marriage had been annulled on May 4, 1970.

On March 30, 1970, the Local Board received a reply from the SEEK program to the effect that defendant had terminated his employment there on May 31, 1969. That letter listed his last known address as 99–03 23rd Avenue, East Elmhurst, New York.

The Local Board on April 17, 1970 directed defendant to comply with the preinduction order that had been issued in February 1970, by reporting for an Armed Forces examination on May 17, 1970. Defendant again failed to report.

In May 1970 the Board considered defendant's entire file and again classified him 1–A. Although the usual notice of right to appeal was sent to the defendant, no appeal was taken. However, on May 20, 1970, the defendant wrote the Board and requested a new preinduction examination date as he had been ill on May 17, 1970. That letter listed defendant's return address as 99–03 23rd Avenue, East Elmhurst, New York. Prior to receipt of defendant's letter, the Board had already rescheduled the preinduction examination for June 4, 1970. Defendant again failed to report. After receiving defendant's letter on May 22, 1970, the Board issued a new order rescheduling the examination, this time for August 20, 1970. Defendant again did not report for the preinduction examination. It is for defendant's continuous failure to comply with the Local Board's orders to report for a preinduction examination that he is being charged with count one of the indictment.

On October 16, 1970 after the defendant's lottery number had been reached, he was ordered to report for induction on November 2, 1970. He failed to report. Defendant's continuous failure to report is the basis for count two of the indictment.

Defendant's case was referred to the United States Attorney for prosecution and on August 3, 1971 after being contacted by a Special Agent of the Federal Bureau of Investigation he reported to the Local Board and filled out a Current Information Questionnaire. He gave as his mailing address the home of his parents, 99–03 23rd Avenue, East Elmhurst, New York, the address that he had given on several previous questionnaires and letters. At that time Mrs. Isabel Oldford, the Local Board Clerk, advised defendant of his obligation to report for induction. A letter from the F.B.I. to the Local Board dated August 10, 1971 stated "[t]his is to confirm that on Au-

gust 3, 1971, the subject appeared at your board and furnished his new address of 1035 Clarkson Avenue, Brooklyn, New York."

At that time the United States Attorney declined to prosecute defendant with a view toward encouraging compliance with the induction order. Defendant was advised of his continuing duty to report on September 14, 1971 and again on February 17, 1972 by letters from the Local Board. Defendant failed to report.

On January 9, 1973 Special Agent Thomas F. Donlan III of the Federal Bureau of Investigation visited the East Elmhurst address and left a note that either defendant or his father, Mr. Chad Hill, was to call Donlan. The next day defendant called. Over the telephone defendant was advised of his Miranda rights. Defendant told Donlan that at no time had he received any notices from his Local Board concerning induction into the armed forces. He told Donlan that he was currently employed at the Addiction Research and Treatment Center, 22 Chaple Street, Brooklyn, New York, and that he would not submit to induction. He said that he did not feel that his new life style would permit him to serve in the armed forces. Defendant also related that he could be reached through his parents at the East Elmhurst address and said that he was moving around and had no permanent address of his own

Defendant was indicted on May 22, 1973 for failing to report for his preinduction examination and failing to report for induction. On June 25, 1973 the defendant reported for a physical examination and for induction. He scored a four out of a possible one hundred on the mental test and was "mentally disqualified." Sergeant William Pompa, the person who administered the mental test at the examination, testified that it was possible to fail the test deliberately. He said this could be done by the registrant knowing the correct answers and purposefully not writing them down. However, as protection against such

fraud, the testing authorities have a personnel psychologist interview registrants who fail to determine whether they failed deliberately. The psychologist has authority to "administratively accept" a registrant. While Pompa did not specifically testify that this occurred here, he said it was done in all cases where a registrant fails. Also, defendant's examination report itself has a stamp on it which indicates that he was found mentally disqualified "Per Psych JEM." There was no testimony by the psychologist as to the reasons why he found defendant mentally disqualified, indeed, the psychologist was never even identified. Defendant was not given the "physical" part of his examination because he had failed the mental part.

As his first defense, defendant argues that in view of his submitting himself for examination and induction in June 1973, the decision of the United States to prosecute was arbitrary, capricious, and constituted a denial of equal protection of the law. Defendant's position is that if the indictments against other persons in his status are dismissed when they report for induction, to deny him that same opportunity to purge himself is an illegal discrimination.

Defendant's first defense fails for at least two reasons. The bringing of the indictment was entirely discretionary with the government and was in accord with the policy of the Department of Justice. That policy is to deny authorization to dismiss Selective Service violation indictments unless the defendant is inducted and if rejected by the Armed Forces, then to authorize dismissal only if there is a bona fide showing that the condition that caused the rejection preexisted the violation. This defendant had gone to college for several years and had held at least three responsible jobs. When his background is considered in conjunction with his score of four on the mental examination, his continuous failure to obey orders from his Local Board, and his statement to Special Agent Donlan that he would not be inducted, the inescapable conclusion must be that

there has been no showing of a bona fide preexisting condition which caused the rejection. The government's refusal to dismiss the indictment was not arbitrary, capricious, or a denial of equal protection.

More importantly, the offenses here charged were complete as of the date of the indictment and anything that occurred subsequently is entirely irrelevant. United States v. Borkenhagen, 468 F.2d 43, 50 (7th Cir. 1972), cert. denied 409 U.S. 1021, 93 S.Ct. 457, 34 L. Ed.2d 313 (1972); United States v. Greene, 456 F.2d 256 (9th Cir. 1972), cert. denied 406 U.S. 977, 92 S.Ct. 2425, 32 L.Ed.2d 677 (1972); United States v. Weissman, 434 F.2d 175, 178–179 (8th Cir. 1970), cert. denied 401 U.S. 982, 91 S.Ct. 1190, 28 L.Ed.2d 334 (1972); United States v. Battaglia, 410 F.2d 279 (7th Cir. 1969), cert. denied 396 U.S. 848, 90 S.Ct. 73, 24 L.Ed.2d 97 (1970).

Defendant raises the argument that since he was not permitted to complete the preinduction examination after he had failed the mental test, there is no way of knowing whether he would have passed and thus his good faith could not be established. The answer to that is again, the violation was complete before the examination, indeed, before the indictment, and subsequent events are irrelevant.

■ The defense of notice has been raised by defendant. He alleges that he never received any notification from the Local Board concerning preinduction examinations or the induction order. As evidence to support this, defendant points to his statement to Special Agent Donlan that he had received no notice and the letter from the F.B.I. to the Local Board "confirming" defendant's appearance at the Board on August 3, 1971 and giving his address as 1035 Clarkson Avenue, Brooklyn, New York. From the Selective Service file and trial record it appears that the following occurred. Defendant, when he initially registered with the Local Board in 1964, gave his parents' address, 99–03 23rd Avenue,

East Elmhurst, New York, as the address to which communications from the Local Board should be sent. On every subsequent Current Information Questionnaire including the one filled out by the defendant on August 3, 1971 (except for brief periods in 1965 when defendant was studying abroad in Italy and in 1966 and 1967 when defendant was in school in Iowa) defendant gave that address as his mailing address. Not once in the entire history of defendant's Selective Service correspondence was a piece of mail returned to the Local Board by the Post Office.

The regulation dealing with this question, 32 C.F.R. 1641.3 reads as follows:

It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not.

*See also*, 50 U.S.C.App. § 465(b) (1971).

The Local Board sent all communications to the addresses supplied by defendant. The F.B.I. letter giving the Brooklyn address as defendant's was apparently in error. While it is true that defendant had lived at the Brooklyn address, on August 3, 1971 he again gave the East Elmhurst address as his *mailing* address. He explained to Special Agent Donlan in January 1973 that he could be reached only at the East Elmhurst address as he had no stable address of his own. In addition, there is evidence that defendant did receive information sent to the East Elmhurst address. On January 9, 1973 Special Agent Donlan left a message at the East Elmhurst address for either defendant or his father to contact him. The very next day defendant called Donlan.

On August 3, 1971 Mrs. Isabel Oldford, the Local Board Clerk, advised defendant, in person, of his continuing obligation to report for induction. Special

Agent Donlan on January 10, 1973 again apprised defendant of the outstanding induction order. In light of his refusal to present himself for induction after these notifications, and taking into consideration the presumption of notice that attaches when the Local Board mails notices to the addresses supplied by the registrant, Hagner v. United 285 by the registrant, Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Karnap, 477 F.2d 390, 393 (4th Cir. 1973); United States v. Bethea, 483 F.2d 1024, 1029 (4th Cir. 1973), the court finds that defendant did receive adequate notice.

 An essential element of the crimes charged herein is that defendant must have knowingly failed to perform a duty required of him. The government must show that he was fully cognizant of his legal obligations and deliberately failed to comply with them. United States v. Couming, 445 F.2d 555, 557 (1st Cir. 1971), cert. denied 404 U.S. 949, 92 S.Ct. 291, 30 L.Ed.2d 266 (1971); United States v. Jacques, 463 F.2d 653 (1st Cir. 1972); United States v. Figurell, 462 F.2d 1080 (3d Cir. 1972); United States v. Day, 442 F.2d 1034 (9th Cir. 1971); United States v. Rabb, 394 F.2d 230 (3d Cir. 1968).

Although the defense of lack of specific intent as a result of mental incompetency was not pleaded, the court feels it important to raise the issue on its own. The only evidence that the court has before it indicating lack of mental ability is the result of the Armed Forces Intelligence Test which itself is not in evidence. On the other side the court can look to the statements of two supervisors that defendant's work was important and valuable, his record of having attended college, even to the point of having studied abroad, the letters and questionnaires that he sent to the Local Board, his admitted work with a drug addiction center, and his statements to Special Agent Donlan. When the record is considered as a whole, there is little doubt that defendant had adequate mental ability to understand the nature of the induction orders sent and the import of what he was doing.

The government has proven beyond a reasonable doubt that defendant had notice of both the orders for the preinduction examinations and the induction itself. Considering defendant's statement to Special Agent Donlan that he would not submit to induction in conjunction with all the other evidence in the record, the court finds beyond a reasonable doubt that defendant knowingly failed to report for the preinduction examination and the induction ceremony itself and therefore is guilty of both counts of the indictment.

The foregoing opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure.