UNITED STATES of America
v.
Edward HOLOHAN, Defendant.
No. 73 Cr. 375.

United States District Court,
S. D. New York.

Jan. 20, 1975.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for the United States; George E. Wilson, Asst. U. S. Atty., of counsel.

Chester L. Mirsky, New York City, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant was indicted on April 24, 1973, and charged in two counts: (1) failure to report for an Armed Forces physical examination from June 19, 1972 to April 24, 1973;[1] and (2) failure to report for induction from August 17, 1972 to April 24, 1973.[2]

He moves to dismiss the indictment upon two grounds: (1) that the United States Attorney abused his discretion and denied the defendant due process by failure to comply with the policy of the Attorney General with respect to the dismissal of indictments against those who remove their delinquency by submitting to induction processing; and (2) that the Local Board denied him due process in classifying him without considering a pending criminal charge against him.

Following the defendant's indictment, his attorney conferred with the Assist-

---

1. 50 U.S.C. App. § 462(a); 32 C.F.R. § 1628.16.

2. 50 U.S.C. App. § 462(a); 32 C.F.R. § 1632.14.

ant United States Attorney as to defendant's possible induction in lieu of prosecution, and as a result, according to the Assistant, consent was given to allow induction processing to go forward upon an understanding that the indictment would be dismissed if the defendant were inducted. Alternatively, the Assistant states, if defendant were not inducted, he had the option of entering the Treatment Alternative to Street Crime (TASC) project, pleading guilty to one count, or standing trial. On June 11, 1973, the defendant submitted to induction but was rejected on psychiatric grounds related to preexisting drug use. The following day defendant signed an agreement to participate in the TASC program and was accepted for treatment. In October 1973 the defendant was dropped from the program for failure to comply with the rules. In November 1973 the government served its notice of readiness for trial. Subsequently, due to his attorney's efforts, the defendant was reinstated in the TASC program, but unfortunately defendant failed to cooperate, the plan to assist defendant did not succeed, and the defendant was terminated in November 1974. On November 20, 1974, the defendant advised the court he desired to participate in the President's Amnesty Program. Thereafter the defendant made the instant motion.

■ As to his first contention, the defendant relies upon a policy of the Department of Justice articulated in guidelines set forth in the United States Attorney's Bulletin [3] dated October 3, 1969, reaffirmed and clarified in a memorandum from the Attorney General to all United States Attorneys dated May 10, 1972, as follows:

"It has been and continues to be the Department's policy to allow a defendant, in the absence of aggravating circumstances, to remove his delinquency under the Military Selective Service Act by submitting to induction processing and to authorize a dismissal of his indictment upon successful completion of induction. . . . In the event the defendant is rejected on the basis of a physical, mental or psychiatric defect or on moral grounds, which preexisted his violation, authorization to dismiss will be granted. However, if the basis for rejection occurred after the violation, and the disqualifying physical defect was self-inflicted, self-induced or occurred as a result of the defendant's own fault, authorization to dismiss will not be granted."

The defendant was found medically disqualified upon the examining doctor's conclusion that "[h]is adjustment was never up to par." The defendant contends that under the policy set forth above such rejection requires dismissal of the indictment [4]—in sum, that the United States Attorney is without discretion and that the policy directive mandates dismissal of the indictment.

An Attorney General is empowered to issue a directive to United States Attorneys to dismiss indictments under certain circumstances, and they are bound to abide by such a directive.[5] But it does not appear that the policy here in question is such a directive. The manual for United States Attorneys issued by the Department of Justice requires them to obtain authorization prior to dismissing a pending indictment. The memo setting forth the policy here in question sets up the guidelines to indicate under what circumstances the Department of Justice will authorize dismissals of Selective Service indictments and the procedure to be followed when a

---

3. Vol. 17, No. 26, p. 679 (Oct. 3, 1969).

4. The examining doctor's report, in addition to referring to defendant's use of heroin over a 4-year period, refers to a criminal conviction and other anti-social activities. Whether or not the totality of this conduct constitutes "aggravating circumstances" within the meaning of the policy as set forth above need not be considered in view of the disposition made herein.

5. See 28 U.S.C. § 519.

United States Attorney requests such authorization. It does not direct the United States Attorney to seek such authorization; nor does the memo itself provide any blanket authorization. Whether such authorization is to be sought remains in the discretion of the United States Attorney. The language of the memo, while leaving no doubt as to the Department's response to a request for authorization to dismiss, does not, either implicitly or explicitly, manifest an intention to circumscribe the United States Attorney's discretion in deciding whether, under the circumstances of a particular case, to seek such authorization.

Indeed, the letter from the Assistant Attorney General dated April 20, 1973, in answer to a contention similar to that advanced here, specifically states that the principles set forth in the memo "are intended only as general guidelines to be applied by United States Attorneys on an *ad hoc* basis," and that a United States Attorney must weigh all the facts of each case "in exercising his judgment and discretion whether to dismiss an indictment."

In the instant case consent to the induction process and dismissal of the indictment was conditioned upon the defendant's acceptance into the Army, failing which the defendant was given the alternative of satisfactory compliance with the TASC program or, if that failed, of a trial. He is entitled to a trial; not to a dismissal of the indictment.[6]

■ The defendant next contends he was denied due process of law when he was classified 1–A by his Board without its considering the fact that he was facing a criminal charge. The defendant's initial classification questionnaire submitted to the Board on March 21, 1971 set forth that he was "now being detained in custody of a court of criminal jurisdiction, on parole awaiting trial." He contends that the Board, in deciding his classification, was under a duty to consider all information pertinent thereto;[7] further, that the Board was required to place those registrants who were found "under applicable physical, mental and moral standards" to be not qualified in either Class 1–Y[8] or Class 4–F,[9] depending upon conditions in each instance; that his detention on a criminal charge was pertinent to his classification based on "moral standards" under either of the aforesaid provisions; accordingly, that the Board's failure to consider the pending criminal charge on the issue denied him due process of law.

In sum, odd as it may appear, the defendant argues that the fact he was under a criminal charge, the nature of which was not specified, required the Board, even though he was found otherwise qualified for 1–A classification, to consider him for a 1–Y or 4–F classification. Upon its face this statement requires its rejection. The defendant's attempt to equate his position to that of registrants such as ministers, students, conscientious objectors, the physically disabled, hardship cases, and others who are entitled to consideration for deferred status based upon standards contained in either the Selective Service law or the regulations thereunder is patently

---

6. In none of the cases cited by the defendant did a court dismiss an indictment for failure to follow the policy. In United States v. Battaglia, 410 F.2d 279 (7th Cir.), cert. denied, 396 U.S. 848, 90 S.Ct. 73, 24 L.Ed.2d 97 (1969); United States v. Hill, 369 F. Supp. 218 (E.D.N.Y.), aff'd, 497 F.2d 919 (2d Cir. 1974); and United States v. Lewis, 302 F.Supp. 510 (E.D.Wisc.1969), the defendant did not fall within the group protected by the policy for one reason or another. In United States v. Lazarus, 6 Sel. Serv.L.Rptr. 3406 (W.D.Pa.1973), the court did note that the prosecutor had refused to dismiss the indictment although there were grounds to do so under the policy, but it dismissed the indictment on the ground that there had been prejudicial delay in presenting the charge against the defendant to the grand jury.

7. 32 C.F.R. § 1622.1(c), redesignated § 1622.1(a), 36 Fed.Reg. 23376 (Dec. 9, 1971).

8. 17 C.F.R. § 1622.17, revoked, 36 Fed.Reg. 23376 (Dec. 9, 1971).

9. 32 C.F.R. § 1622.44(a), amended, 36 Fed. Reg. 23376 (Dec. 9, 1971).

without substance. Deferment in those instances is based upon recognized standards which in end result benefit the community and the individual. The very contention raised herein upon substantially the same facts was passed upon by my colleague Judge Palmieri in United States v. Tarin,[10] and nothing more need be added to what was set forth in his opinion.

The above disposition makes it unnecessary to pass upon the government's contention that in any event the determination of moral fitness is to be made by the Armed Forces Examining and Entrance Station (AFEES) and not by the Local Board.

The motion to dismiss the indictment upon the stated grounds is denied.

---

10.  72 Cr. 496 (S.D.N.Y.), aff'd, 485 F.2d 677 (2d Cir. 1973), cert. denied, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974)